PETROVIC *vs.* HYDE ET AL.

WESTERN DIST.
October, 1840.

APPEAL FROM THE COURT OF THE SIXTH DISTRICT, FOR THE PARISH OF NATCHITOCHES, THE JUDGE OF THE SEVENTH PRESIDING.

PETROVIC
*vs.*
HYDE ET AL.

In an ordinary partnership, the act of one partner executing a mortgage and note in the name of the partnership, for certain slaves which had been previously purchased, is valid and binding, as tending to benefit the firm.

Where certain slaves belonging to a firm are sold and transferred by two of the partners to the third one, who receives them and undertakes to pay the price, it is a ratification of the previous mortgage and sale of the slaves to the firm by him, and he is bound.

Where a partner buys out the property of the partnership, and stipulates with his co-partners to pay a certain mortgage debt, the creditor has a right to proceed directly against him, by order of seizure and sale, as the principal debtor, who is personally liable and not entitled to the privilege of a third possessor : namely, the right of relinquishment.

This case commenced by injunction. It appears that in June, 1837, John F. Cortes of the commercial firm of Peter Petrovic & Co., composed of Peter Petrovic, John F. Cortes, and John Laplace, purchased ten slaves, in the name of the firm, for the sum of eleven thousand one hundred dollars, and executed a mortgage on nine of said slaves to secure the payment of a note given for *their* price, amounting to nine thousand two hundred dollars.

The note was signed with the name of the firm of " Peter Petrovic & Co., per John F. Cortes," one of said firm, payable six months after the 3d June, 1837, and secured by mortgage.

On the 16th August, 1837, Petrovic, Cortes and Laplace, entered into a special co-partnership by notarial act, under the style and firm of P. Petrovic & Co., for the purpose of conducting a plantation, which they declare they had purchased that day, from W. B. Weathersby, with all the slaves, stock, &c. and that they had purchased from Edmond Hyde, ten slaves, &c. Petrovic was to have the sole management and control of said plantation, and the name of the firm was not to be

WESTERN DIST.
October, 1840.

PETROVIC
vs.
HYDE ET AL.

used in drawing or endorsing notes or bills, except with the consent of all the partners, &c.

It appears that the other partners transferred all their right and title in the property of the partnership to Petrovic, and retired from the concern.

On the 4th June, 1838, the note of nine thousand two hundred dollars, given for the price of the nine slaves from Hyde, remaining due and unpaid, the latter took out an order of seizure and sale against nine of the slaves in the possession of Petrovic. The latter sued out his injunction, and alleged that he was a third possessor and owner of the slaves seized; that Cortes had no power or authority to bind the partnership by giving the note for the price of said slaves and the mortgage to secure payment; that the order of seizure was illegal because the note is made payable to William L. Cockerill and endorsed by him, and by S. P. Russell, L. Prudhomme and by the said E. Hyde; and that the transfer by said endorsements is a matter *en pais*, and unsupported by authentic evidence; that the seizure is illegal and void, because there has been no amicable demand of the common debtor thirty days before coming on the third possessor, and allowing him ten days notice, and because Hyde has not taken the oath required by the *70th article*, of the *Code of Practice.*

The petition for the order of seizure is drawn and signed by counsel, without the oath of Hyde at the foot of it.

The note annexed to the mortgage, upon which order of seizure issued, is made payable to William L. Cockerill, and by him endorsed in blank, and by S. P. Russell, Lestin Prudhomme and E. Hyde, and marked *ne varietur*, by the parish judge, to identify it with the mortgage.

The defendant, in injunction, filed exceptions to the injunction, averring various defects in the petition, and answered to the merits, and prayed that the injunction be dissolved with damages, and for judgment for the amount of his demand.

There was judgment dissolving the injunction and ordering the slaves under seizure to be sold, and that the defendant in

injunction, recover from Petrovic and his sureties, *in solido*, two hundred and fifty dollars, special damages, and one thousand dollars, being ten per cent. damages on the debt enjoined, and costs.

A motion for a new trial being overruled, the plaintiff appealed.

*Sherburne,* for the plaintiff:

The appellant and plaintiff in injunction, contends that the judge *a quo,* erred in dissolving the injunction, because:

1. Petrovic, Cortes, and Laplace, being particular partners, one of the partners could not, under the articles of partnership or without a special power, bind the co-partners in the mortgage and note to Hyde. *Louisiana Code,* 2197, 2806, 2838 ; 4 *Louisiana Reports,* 305.

2. Cortes had no power to bind the partnership, although he assumes the power of agent in the act of mortgage, no proof has been made of any authorization empowering him to act in that capacity. *Idem,* 2846, 2966 ; 4 *Louisiana Reports,* 305.

3. The act of mortgage signed by Cortes in the name of the partnership, would have been binding had the partnership been benefited by the transaction. *Idem.,* 2845. No such proof has been offered; the difference between the amount of the two notes given is no proof of the fact, and the additional burden of a mortgage renders the primitive contract more onerous, and would in no way benefit the partnership.

4. The mortgage to Hyde, given without authority by one of the partners, has never been confirmed by the plaintiff and appellant. In the sale to Petrovic, by Cortes and Laplace, the former binds himself "to pay and satisfy all claims against the said late partnership resulting from the *purchase* from Hyde, thereby assuming the payment of *said claim* and putting himself in the place and stead of the said Cortes and Laplace with regard to the same." The sale from Hyde to Petrovic is not questioned, but we contest the validity of the

act of mortgage; first, on the ground hereabove set forth that we were not party to it, and now because no ratification of said act ever took place. *Louisiana Code*, 2252 ; 8 *Toullier*, *No*. 491, 495 ;  13 *Louisiana Reports*, 159 ;  13 *Duranton; No.* 267.

5.   The note is endorsed by Cockerill and others, and the transfer of it by endorsement is a matter *en pays*, and is not established by any authentic evidence.   The order of seizure and sale was, therefore, improperly granted.   4 *Louisiana Reports*, 320 ; 13 *Idem.*, 513 ; 10 *Martin*, 222.

6.   The note is made in the shape of a commercial note, and no doubt can be entertained that it was executed in that shape for the purpose of being negotiated, and no doubt can exist, but that the holder of the note had it in his power to charge the endorsers by causing protest to be made and serving them with notice ;  they cannot, therefore, be considered in the light of sureties.   The endorsements are not proved, and there is no mention in the act of mortgage that those endorsements were actually made. 13 *Louisiana Reports*, 512.

7.   The mortgage is accessory to the principal obligation, *Louisiana Code*, 3251 ; and the note is the evidence of it. Should there be any thing in the note that would preclude the holder from enforcing its payment, the mortgage cannot be enforced.   12 *Louisiana Reports*, 386.

8.   Petrovic became, by the sale of Cortes and Laplace to him, third possessor of two-thirds of the property they had previously owned in common.   The French authorities consider a sale of the above kind, between co-partners, in the same light as a partition, and the co-partner who purchased the whole estate is considered as having owned it all and immediately.   *Code Nopoleon*, 883 ; and, consequently, that he does not hold it *à titre de vente* ; *Pothier, Contrat de Vente, No.* 639; *Duranton de privilegès et hypothèques, No.* 223, 224.   It is otherwise under the Roman law ; *Pothier, Idem.*, No. 631 ; it is considered under that law as an exchange, *permutatio que vicem emptionis obtinet. Domat de la nature des partages Nos.* 2 and 3.

Our legislators have adopted the doctrine of the Roman law.   *Louisiana Code*, 1420.   The plaintiff and appellant

must be considered as owning the slaves under an act of exchange, *which has obtained the force of a sale,* and he is consequently a third possessor.   *3 Louisiana Reports,* 404.

9.  Hyde has not complied with the requirements of law as to third possessors.   *Louisiana Code,* 3363–64–65. *Code of Practice,* 68, *et. seq.* 732, 734 ; *4 Louisiana Reports,* 126, 323 ; 11 *Idem.,* 174.

10.  It is clear that Hyde could only exercise his privilege as vendor but upon the note given by Petrovic & Co. for the purchase of the slaves.   The note upon which the proceedings were instituted is the one given with the mortgage. From the facts and evidence of the case a strong presumption arises that the debt was novated, and the vendor has therefore lost his privilege.   *Louisiana Code,* 2181, 2185, 2191 ; 1 *Louisiana Reports,* 527 ; 4 *Idem.,* 507.

*Dunbar* and *Hyams,* for the defendant, Hyde, contended that the plaintiff must be confined to the same grounds in the appellate court as those on which the injunction issued. *3 Louisiana Reports,* 220 ; and that those grounds are insufficient.   The plaintiff says first, that he is not bound by the act of sale by Hyde to P. Petrovic & Co., because it was signed by Cortes, in the name of the firm without authority. By looking at the record, it will be seen that Petrovic signed it himself, he, therefore, is bound for the whole debt of eleven thousand dollars, and for which sum the defendant had the vendor's privilege.   He says secondly, that Cortes, one of the partners, executed the mortgage and note subsequently given, and that they are not binding on him.   Let it be admitted that they are not.   Hyde, the vendor, had the vendor's privilege as against Petrovic, his original debtor, and Petrovic cannot complain that the order of seizure has been issued for the amount of the note and mortgage which is less than the note due by him, by the act of sale.   He does not set up in his petition that the debt has been novated, that it has been paid or extinguished, nor does he set up that the note mentioned in the act of sale and given by him, should have been produced and accompanied the petition for seizure and sale.   None of these objections then can avail him.

2. The plaintiff insists that there is no evidence of an authentic character to show the endorsements on the notes ; this was not necessary.   See the case of *Gorton's Ex'r. vs. Gorton* ; 12 *Louisiana Reports,* 476.

3. He alleges that he is a third possessor; this appears to be a strange defence.   He a third possessor, when he was the original purchaser, debtor and possessor, and by the sale of his partners to him, bound himself to pay this debt to Hyde, and to stand in the place of the firm, and whatever doubt there might have been on the subject, whether Petrovic's title related back to the original purchase, is dispelled by *this agreement,* thereby stipulating that his title should relate back to the original purchase.   There never was the time when Petrovic lost the possession, and he was always the original debtor.   The reason of the rule allowing time to the third possessor, and demand of the original debtor before process, does not apply to him.   See *Code of Practice, articles* 63, 68, 69, 70, 71 ; *Civil Code, articles* 3315, 3360, 3361 ; 1 *Martin, N. S., page* 384.   Time is to be given to the third possessor, because he may give up the property ; a demand is to be made of the original debtor, because he is personally bound for the debt; but when possession and original indebtedness are united in the same person, these formalities are dispensed with.

*Taylor,* on the same side, submitted a written argument and explanation of the case.   He showed that Petrovic became the principal debtor, by the act of transfer of these slaves from his co-partners, and contracted to pay the debt.

*Simon J.,* delivered the opinion of the court.

The record shows that in March, 1837, plaintiff, acting in the name of the ordinary partnership of Petrovic & Co., composed of himself, J. F. Cortes, and J. Laplace, purchased from defendant, Hyde, ten slaves, for the sum of eleven thousand dollars, for the payment of which no particular time is specified in the notarial act of sale.   In June, following, Cortes, one of the partners, executed, in the name of the

firm, an act of special mortgage in favor of the vendor, Hyde, on *nine* of the slaves sold, to secure the sum of nine thousand two hundred dollars, for which Cortes gave a promissory note, signed in the name of said firm, payable six months after date, to the order of one Cockerill, who was to endorse it, together with two other persons named in the act. In August, ensuing, an act of partnership was passed between plaintiff, Cortes and Laplace, in which the slaves bought of Hyde are mentioned as belonging to the firm ; said partnership, to have effect from the first of March, preceding.   In April, 1838, Cortes and Laplace, sold and transferred to plaintiff, their respective title and interest or portion to the property of the firm, and specially to the *nine* slaves purchased from Hyde ; said Petrovic "binding and obligating himself to pay and satisfy all claims against the late partnership, resulting from the said purchase from Hyde, assuming the payment of said claim, and putting himself in the place and stead of his co-partners with regard to the same."

In June, 1838, Hyde obtained an order of seizure and sale of the nine slaves by him sold to the firm, predicating his claim against Petrovic alone, on the above mentioned several acts, and particularly on the ground that Petrovic had assumed the payment of the amount due him for the purchase of the slaves, in an authentic act, and had thereby become his sole and principal debtor.   The order of seizure and sale having issued, was levied on the nine slaves sold and transferred to the plaintiff by his co-partners ; the sale thereof was advertised, and afterwards stayed by an injunction, which is now the subject matter of this suit.   Defendant, Hyde, filed exceptions to the plaintiff's petition in injunction, and in the meantime, answered to the merits by pleading the general issue, and prayed that said injunction be dissolved, and for judgment against plaintiff for general and special damages. The District Court dissolved the injunction, and gave judgment against the plaintiff and his sureties, for two hundred and fifty dollars, special damages, and one thousand dollars, being ten per cent. damages on the judgment. enjoined ; from which judgment plaintiff appealed.

Plaintiff seeks to maintain his injunction on the following grounds, which are the same alleged in his petition :

1st. That the obligation and mortgage contracted by Cortes, in the name of the firm, are not binding on plaintiff, because it was contracted without the consent of his co-partners, and the partnership was not benefited by the transaction.

2d. That the transaction between Cortes and Hyde, was not ratified by the other partners.

3d. That the note signed by Cortes is in the shape of a commercial note, payable to the order of a third person, and the transfer of it by endorsement is a matter *en pays*, and is not established by authentic evidence.

4th. That plaintiff, by the sale of Cortes and Laplace to him, became the third possessor of two-thirds of the property they previously owned in common, and defendant, Hyde, could not apply for the order of seizure and sale complained of without having previously shown, under oath, that he had complied with the requisites of the law in hypothecary actions.

I. When the plaintiff made the purchase from Hyde, in the name of the partnership, he had no special authorization from his co-partners, but his act was afterwards ratified by the articles of partnership. Cortes, as it appears from the evidence, a short time after the purchase, from which the vendor's privilege necessarily resulted, executed a contract of mortgage in the name of the firm, on *nine* of the slaves originally sold to the plaintiff, to secure the sum of nine thousand two hundred dollars, the difference being a deduction, and this may be fairly presumed, from the whole amount of the first sale, at the price or value of the tenth slave, which was perhaps returned to the vendor, in consequence of a defect mentioned in the said original sale. From this contract, the partnership undoubtedly benefited, as further time was granted to pay the amount of the price, and as the partners, far from being placed in a worse situation, had a less sum to pay than the amount stipulated in the first contract.

II. From the act of partnership, and particularly from the sale made to plaintiff by Cortes and Laplace, it appears to us

clear, that said plaintiff approved and ratified the transaction that had taken place between Cortes and Hyde. In this last document, the slaves stated to have been purchased from Hyde are mentioned to be *nine* in number, and plaintiff must undoubtedly have been informed then, that only nine slaves belonged to the firm, as a consequence of the transaction which Cortes had undertaken to make with Hyde, for the original purchase made by plaintiff himself, had been for *ten.* He accepted the sale and transfer of those nine slaves without objection, and nothing shows that any inquiry was ever made by plaintiff, into the reason why the tenth slave was not also transferred to him, with all the other property of the firm. We consider this circumstance of the purchase of nine slaves by the plaintiff, as being those coming from Hyde, undoubtedly made in reference to the act of mortgage executed by Cortes, as amounting to a voluntary approbation, and sufficient ratification of said act.

WESTERN DIST.
*October*, 1840.

PETROVIC
*vs.*
HYDE ET AL.

Where certain slaves belonging to a firm are sold and transferred by two of the partners to the third one, who receives them and undertakes to pay the price, it is a ratification of the previous mortgage and sale of the slaves to the firm by him, and he is bound.

III. The note was not endorsed for the purpose of being transferred, the endorsers had nothing to transfer, as they were only to be considered in the light of sureties; 12 *Louisiana Reports*, 476 : This point is certainly untenable.

IV. By the stipulations contained in the act of sale from Cortes and Laplace to plaintiff, he assumed to pay the debt to Hyde, and became thereby the principal debtor. Such stipulations, made not only for the advantage of the co-partners, but also for the benefit of a third person, are binding on the obligor, who, in this case, put himself so entirely in the place of his vendors and former co-proprietors, in relation to the debt due to Hyde, the amount of which he must have ascertained at the time, that the latter had immediately a right to call upon him for said debt. 1 *Martin, N. S.*, 384. Viewed in this light, we cannot consider him as an ordinary third possessor, but surely as one who is personally liable to pay the debt, and who, therefore, cannot enjoy the privileges allowed by law to third possessors of property mortgaged, namely, the right of relinquishment. *Louisiana Code, articles* 3366 and 3368. The creditor in this case, in sustaining his action of mortgage, based it principally on the stipulations

Where a partner buys out the property of the partnership, and stipulates with his co-partners to pay a certain mortgage debt, the creditor has a right to proceed directly against him by order of seizure and sale, as the principal debtor, who is personally liable and not entitled to the privilege of a third possessor : namely, the right of relinquishment.

contained in the last act of sale, and thereby accepted them in their fullest extent; he had a right to do so, and the plaintiff cannot now be allowed to object to the enforcement of the obligations by him contracted in the said act.

The decision of these points, renders it unnecessary to examine the questions relative to the validity and legality of the proceedings had in obtaining and issuing the writ of injunction; and on the whole, we think the judge *a quo*, did not err in dissolving said injunction, and in decreeing general and special damages in favor of the defendant, as it is clear that the writ was wrongfully obtained and sued out.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.