### Beauregard *v.* Case.

1. An agreement provided that the party of the first part should obtain in his own name, but for the joint account of himself and the parties of the second part, a lease of a railroad, and manage the same at a designated salary, for their mutual benefit; and that the parties of the second part should furnish the money necessary to carry out the enterprise, to be reimbursed, with interest, out of its annual profits; and then declared, that, after the payment of the capital thus invested and interest, the annual profits should be equally divided between all the parties, and that all losses should be equally borne between them. *Held*, that the agreement constituted a partnership.
2. According to the law of Louisiana, the partnership in this case being an ordinary one, as distinguished from those which are commercial, each partner is only bound individually for his share of the partnership debts; but to that extent a debt contracted by one partner, even without authority of the others, binds them, if it be proved that the partnership was benefited by the transaction.
3. By operation of law, a partnership debt is not extinguished or compensated by the indebtedness of the creditor to one of the partners; although such partner may, by way of defence or by exception, as it is termed in the practice of Louisiana, offset or oppose the compensation of *his* demand to that of the creditor,
4. Where the petition prayed for a judgment against all the defendants *in solido* for the whole amount of the partnership debt, but the facts alleged by the pleadings and disclosed by the proofs showed that the partnership was not a commercial but an ordinary one within the law of Louisiana, — *held*, that a verdict against each defendant for his proportionate share of such debt and the judgment rendered thereon were not vitiated by such a departure from the issues.

Error to the Circuit Court of the United States for the District of Louisiana.

Case, as receiver of the First National Bank of New Orleans, brought an action against Beauregard, May, and Graham, to

recover the sum of $237,008.39, alleging that said defendants were commercial partners engaged in carrying on the New Orleans and Carrolton Railroad; and that the partnership account, which was kept in said bank in the name of Beauregard as lessee, was largely overdrawn, and the money applied to the use of the partnership; that May, while acting as president of said bank, and to make a nominal settlement, executed a promissory note, in the name of Beauregard, as lessee, payable to the bank on demand, for $40,000; and that said May also drew a bill of exchange on A. C. Graham in New York, in favor of the bank, for $125,000, and caused it, as well as the note, to be placed to the credit of said lessee. The petition also avers that the note was not paid, and that the bill of exchange was not stamped, and never forwarded for presentation, acceptance, or collection; that both of said credits were false, fraudulent, and fictitious; and that May acted with fraudulent intent; well knowing that the note had not been discounted by the bank, and that the bill would not be paid; and further averring, that, as the money thus obtained was used for the benefit of the partnership, the partners are liable therefor *in solido.*

Graham was not served with process, and did not appear.

Defendants severed in their answer. May filed a general denial of the matters in the petition stated, and also averred that he was a discharged bankrupt.

Beauregard, in his answer, denied the existence of a partnership and his liability on account thereof, alleging that he was merely a salaried officer; that, under stipulations of agreement, May and Graham were exclusively responsible for the enterprise; and that the indebtedness to the bank was contracted upon that responsibility, said bank being aware of the state of facts. Beauregard denied the authority of May to execute the note for $40,000 in his name.

In a supplemental answer, he averred that on the 13th of May, 1867, the bank was indebted to May in the sum of $315,779.10; and that if there was any indebtedness by him (Beauregard), as claimed by the plaintiff, it was extinguished by the bank's indebtedness to May.

There was read in evidence an act passed before a notary public, bearing date April 12, 1866, between said Beauregard

and the New Orleans and Carrolton Railroad Company, by which the latter leased its track and appurtenances to Beauregard for the term of twenty-five years from the sixteenth day of that month. It contains sundry stipulations on the part of said Beauregard. The concluding part recites, —

" And thereupon personally came and appeared Thomas P. May and Augustus C. Graham, who, having taken cognizance of this act, declared they do hereby bind themselves and their heirs, *in solido*, with the present lessee, to the said New Orleans and Carrolton Railroad Company, their successors and assigns, as well for the true and faithful compliance on the part of said Beauregard with all the clauses, conditions, and stipulations herein contained, as for· the true and punctual payment of the whole rents therein specified,"

Said act was signed by the proper officer of said company, and . by Beauregard, May, and Graham ; and also a further agreement, bearing date the eighteenth day of said month, between Beauregard, May, and Graham, as follows : —

" ARTICLE 1. Gustave Toutant Beauregard shall obtain in his name, but for the joint account of the appearers, the lease of the New Orleans and Carrolton Railroad : he shall take charge, conduct, manage, and direct the undertaking, at a salary of five thousand dollars per annum, payable monthly at the rate of four hundred and sixteen dollars sixty-six cents and two-thirds per month, promising and binding himself to do his best endeavors to the utmost of his skill and ability for their mutual advantage ; and also he shall have the right to select and appoint his assistants, with proper salaries.

" ART. 2. The said Thomas P. May and Augustus C. Graham shall furnish the amount of money necessary to carry out the enterprise, which amount shall not exceed one hundred and fifty thousand dollars for each of them, making an aggregate amount of three hundred thousand dollars. The said T. P. May and A. C. Graham shall be reimbursed, in capital and interest, at the rate of eight per cent per annum from the annual net profit of the enterprise.

" ART. 3. After the payment of said capital and interest as aforesaid, the annual net profits, gains, and increase as shall arise shall be equally divided between the said appearers, share and share alike ; and also all losses as shall happen by bad debts or otherwise shall be paid and borne equally between them.

" ART. 4. The said T. P. May and A. C. Graham promise and bind themselves to pay the above sum of one hundred and fifty thousand dollars, each of them in manner following : to wit, twenty thousand dollars (each of them) immediately after the signing of the lease by the New Orleans and Carrolton Railroad Company; then twenty thousand dollars (each of them) per month during the next four succeeding months ; then ten thousand dollars per month (should they be required by the lessee G. T. Beauregard) until final payment of the said sum of one hundred and fifty thousand dollars. by each of them.

" ART. 5. There shall be kept just and true books of accounts, wherein shall be entered as well all the money received and expended in and about the said enterprise, as also all commodities and merchandises bought by reason and on account of the present copartnership between the appearers, and all other matters and things in any wise belonging or appertaining thereto, so that either of them may at any time have free access thereto.

" ART. 6. On the first of each month, a statement of amounts received and expended during the preceding month shall be furnished to the said Thomas P. May and A. C. Graham by said G. T. Beauregard, who will make his deposits in the First National Bank in this city.

" ART. 7. This copartnership shall continue from the date of the lease by the said New Orleans and Carrolton Railroad Company to the said G. T. Beauregard, for and during and to the full end and term of twenty-five years next ensuing.

" ART. 8. In case any of the said copartners shall happen to decease before the expiration of the said term of twenty-five years, the present copartnership shall continue between the surviving copartners and the heirs or assigns of the deceased, under the same charges, clauses, and conditions as above set forth.

" And the said parties hereby bind themselves, their heirs, executors, and administrators, for the performance of all and every of the above agreements."

There was evidence conducing to prove the matters stated in the petition and in the supplemental answer; there being to May's credit on the books of said bank, May 13, 1867, the sum of $317,779.10, for which sum he on that day gave a check to the United States in payment of a debt due them.

Beauregard requested the court to charge the jury, —

" If the jury shall find from the evidence that Thomas P. May

is individually indebted to the First National Bank of New Orleans in the sum claimed in plaintiff's petition for moneys obtained by him from the bank upon his sole credit and responsibility or by overdraft upon said bank, paid without the knowledge of the board of directors, and solely through the orders and control of said May as president or leading director of said bank; that said debt had matured at the date of plaintiff's appointment as receiver, and when, as preliminary thereto, the bank was taken in charge by the agent of the Comptroller of the Currency ; and that said May then owed no other debts to said bank; and that at said dates the said bank was indebted to said May in the sum of $315,779 for a balance of his general deposit account, which has never been paid ; then the jury are instructed that the debt sued for in this case was compensated and extinguished by the said indebtedness of the said bank : which charge the court refused to give, but gave it with the addition, provided that said May was the sole debtor of the bank ; to which refusal of the court to charge as requested, and to the charge as given, Beauregard excepted."

Beauregard further requested the court to charge the jury, —

" If the jury shall find from the evidence, that, under the contract between T. P. May, A. C. Graham, and G. T. Beauregard, said May and Graham were to furnish, at their own exclusive charge and responsibility, and as their equivalent for their interest in the profits of the road, the means to carry on the same under said lease ; that, after said means so furnished were repaid to them from the earnings of said road, the profits of the road were to be divided between them and said Beauregard, until which said Beauregard was to be paid a salary from the earnings of said road for his services in managing the same ; and if the jury find, that, in accordance with said contract, May did furnish for said road the amount claimed in this suit which he obtained from the First National Bank, which debt thus created has never been paid, and that the earnings of the road were never sufficient to pay the same, or any part thereof ; then the jury are instructed that G. T. Beauregard is not liable to plaintiff therefor, although the same was expended for the road, unless the jury find that he bound himself for the same, either expressly or by fair implication arising from dealings by him with the bank. But the court refused to charge as requested, but gave the charge with this addition, provided the bank had notice of the terms of said contract between said May, Graham, and Beauregard ; to which refusal of the court to charge as requested, and to the charge as given, Beauregard excepted."

The jury found a verdict against Beauregard and May, each for one-third of the whole amount claimed; and the court rendered judgment accordingly.

Beauregard sued out a writ of error; but May refused to join therein.

*Mr. James M. Carlisle* and *Mr. John D. McPherson* for the plaintiff in error.

*Mr. P. Phillips* and *Mr. Charles Case* for the defendant in error.

MR. JUSTICE FIELD delivered the opinion of the court.

This was an action brought by the plaintiff, as receiver of the First National Bank of New Orleans, against the defendants, Beauregard, May, and Graham, to recover a sum exceeding two hundred and thirty-seven thousand dollars, alleged to have been overdrawn from the bank on their account. Three questions are presented by the record for our determination: *First*, whether the agreement entered into by the defendants on the 18th of April, 1866, created a copartnership between them in operating the New Orleans and Carrolton Railroad, by which the defendant Beauregard became liable with them for the partnership debts before their advances were reimbursed; *second*, whether if a copartnership were thus created, and the defendant Beauregard became from its commencement jointly liable with the other defendants, the indebtedness of the copartnership to the bank was compensated and extinguished by the indebtedness at the time of the bank to the defendant May; and, *third*, whether the verdict was defective in that it found against each defendant served only his proportional third of the whole partnership debt, instead of finding against these defendants the whole amount of the indebtedness.

The agreement of April 18, 1866, provided, on the one hand, that Beauregard should obtain in his own name, but for the joint account of the defendants, a lease of the railroad, and take charge of and control and manage it at a designated monthly salary, for their mutual benefit; and, on the other hand, that May and Graham should furnish the money necessary, not exceeding for each the sum of one hundred and fifty thousand dollars, to carry out the enterprise, to be reimbursed

with interest out of its annual net profits; and then declared that after the payment of the capital thus invested, and interest, the annual net profits, gains, and increase should be equally divided between the parties, share and share alike; and that all losses, from bad debts or otherwise, should be equally borne between them. It designated in terms the contract as one of partnership, and declared that it should continue from the date of the lease of the railroad for the period of twenty-five years.

There was in this agreement all the essential conditions for the creation of a partnership, — provisions for a union of services and money, and a division of profits and losses. The postponement of a division of profits between the three partners until the capital advanced by two of them should be refunded, with interest, did not alter the character of the agreement as one of partnership, nor the liability of all the partners to third persons for debts contracted in the prosecution of its business. It was sufficient to create the partnership relation that profits to be ultimately divided between the parties were contemplated from their joint enterprise (Civil Code of 1870, art. 2811); and the agreement in fixing the commencement of the partnership determined the date of their joint liability.

The partnership belonged to that class of partnerships which is designated in the law of Louisiana as ordinary partnerships, as distinguished from those which are commercial. The latter are such as are formed for the purchase and sale of personal property as principals, or as factors or brokers, or for the carriage of personal property for hire in ships or other vessels. Ordinary partnerships embrace all other kinds, and they differ essentially from the former in the powers and liabilities of the several partners. That which is material in the present case is, that, in ordinary partnerships, each partner is only bound individually for his share of the partnership debts; but to that extent a debt contracted by one partner, even without authority from the others, binds them if it be proved that the partnership was benefited by the transaction. Civil Code of 1870, arts. 2872, 2894. In the present case, there was evidence tending to show that the moneys overdrawn by Beauregard were applied to the purposes of the copartnership. The instruction presented by his counsel assumed that they were thus used; and,

if such were the case, there can be no doubt of his liability
for the same jointly with his partners, unless by the terms of
the contract with them they were to furnish the moneys used
on their separate responsibility, and the bank had notice of the
contract at the time. The addition placed by the court to the
instruction was, therefore, a just and proper qualification.

The indebtedness of the partnership to the bank was in
no respect affected by the attempted credit of the note of
Beauregard, signed by May, for $40,000, and the draft of May
on Graham for $125,000. These instruments were mere de-
vices of May to show on the books of the bank a reduction
of the large amount which was overdrawn on the partner-
ship account. They had at no time any existence as instru-
ments of value entitled to credit at the bank. The draft
was never transmitted to New York, where Graham resided,
and was never presented to him. The instruments never hav-
ing been paid, the indebtedness of the partnership to the bank
remained as it existed previously.

That indebtedness was not compensated and extinguished by
operation of law by the indebtedness at the time of the bank
to May, if such existed. Personal debts are only set off to each
other, or compensated the one by the other, by operation of
law, when they are of the same personal character. A partner-
ship debt is not thus offset or compensated by a demand of one
individual member against the creditor. There is no mutuality
in such cases between the parties.

It is true, as already stated, that the members of an ordinary
partnership, by the law of Louisiana, are only liable to their
common creditor for their proportional part of the indebtedness
of the partnership; and, in a suit by the creditor against the
firm, a partner having an individual demand against the cred-
itor may, by way of defence, or by exception, as it is termed in
the practice of the State, offset or oppose the compensation of
his demand to that of the creditor. But this is a very different
thing from one partner attempting to offset or oppose the com-
pensation of the personal demand of his associate to the claim
of their common creditor. For this position we can find no
authority in the code of Louisiana or the decisions of its courts.
In the present case, for example, the defendant May might

have set up against the claim of the plaintiff his personal demand against the bank, had he not previously disposed of that demand to the United States; but the defendant Beauregard could not set up that demand of May's in compensation of the bank's claim against him for his share of the partnership indebtedness, any more than he could set up a similar demand of a stranger.

The instruction presented by his counsel assumed that the defendant May might have been individually indebted for the whole of the amount of the moneys obtained from the bank for the joint enterprise, and asked, in that event, that the jury be charged that the debt in suit was compensated and extinguished by the indebtedness of the bank to him. At the time this instruction was presented, the contract of partnership was before the court, with evidence tending to show that the moneys obtained had been expended for the joint enterprise. It thus appeared that there was or might be a joint liability of the partners to the bank, whatever the extent of their individual liability for the same indebtedness. The qualification placed by the court to the instruction was, therefore, a proper limitation upon the doctrine of compensation applicable to the case. If there was any liability on the part of May for the indebtedness of the firm, except as partner, it was a liability as surety; and there could be no compensation, by operation of law, between the demand of the bank against him as surety and the indebtedness of the bank to him personally.

The verdict and judgment do, it is true, vary from the prayer of the petition. That seeks a judgment against all the defendants *in solido* for the whole amount of the partnership debt. It is based upon the hypothesis that the defendants were commercial partners, and were thus jointly and severally liable for the whole amount of the partnership debts. But the facts alleged by the pleadings and disclosed by the proofs showing that the partnership between the defendants was not a commercial one within the law of Louisiana, but one there designated as an ordinary partnership, no verdict would have been legal that found any greater sum against each of the partners served than his proportional share of the indebtedness. Code of 1870, art. 2086. There was in this no such departure from

the issues made as to vitiate the verdict and judgment thereon. The reported decisions of the Supreme Court of Louisiana show numerous instances where similar verdicts upon like petitions have been sustained.                          *Judgment affirmed.*