BYBEE *v.* HAWKETT and others.

*(Circuit Court, D. Oregon.* July 1, 1882.)

1. PARTNERSHIP—MINING COMPANY.

A contract between three persons to operate a "mining property as a company" creates a partnership of such persons from the date thereof, and makes each of them liable for the debts contracted in the prosecution of said enterprise; and this, notwithstanding the fact that such contract also provides that there shall be no division of profits between the parties until two of them are reimbursed therefrom the money expended in the purchase of two-thirds of the property from the other one, and the cost of improving the same.

2. MORTGAGE.

   The mortgagee of a mortgage to secure an antecedent debt is not regarded as a purchaser, and therefore the lien of his mortgage will be postponed to that of a prior but unrecorded one.

3. SUIT TO ENFORCE THE LIEN OF A MORTGAGE.

   In a suit to enforce the lien of a mortgage, a subsequent mortgagee, who is made defendant on that account, cannot set up a claim or have a decree against the plaintiff for the amount of his debt upon the ground that the plaintiff is personally liable to him therefor as partner of his mortgagor.

4. PARTNERSHIP WITH A MEMBER OF ANOTHER PARTNERSHIP.

   Although A. may be interested with B. in his interest in a partnership, consisting of B. and two others, that does not make him a member of said last-mentioned partnership.

In Equity.

*B. F. Dowell* and *Walter W. Thayer,* for plaintiff.

*E. C. Bronaugh,* for defendants Robinson and Magruder.

DEADY, D. J.    This case was before the court (6 Sawy. 593) on a motion of the plaintiff to remand it to the state circuit court for the county of Jackson, where it was commenced on June 18, 1879, and the statement of the case there made is now referred to.   Afterwards, on May 2, 1881, exceptions for impertinence were allowed to certain portions of the "reformed bill," including those relating to the Irwin note for $1,328.33, (erroneously printed in 6 Sawy. as $3,128.33,) the note to Kubli and Bolt for $85.43 signed by the plaintiff, and the $86.24 due from Irwin to the plaintiff.

The cause is now argued and submitted on the pleadings, including the answers of the defendants Jesse Robinson, E. C. Robinson, John L. Robinson, and C. Magruder for himself and partner, Benjamin Haymond, and the testimony and exhibits; the defendants A. W. Hawkett, William W. Irwin, William Smith, Kasper Kubli, John Bolt, James F. Gazley, A. A. Fink, and Thomas Robinson having failed to answer.

It appears that on October, 13, 1877, James Neely, as administrator of the estate of Evan Taylor, deceased, sold to the plaintiff, William Bybee, a certain mining property known as "the Taylor claims," situate in Josephine county, Oregon, and described as lot 5 in section 35, of township 35 S., range 7 W., and two water rights and ditches approximate thereto, for the sum of $3,100, there being an agreement at the time between said Bybee and William Smith and William Irwin that the latter should each be entitled to a conveyance of an undivided one-third of the property upon the payment to Bybee of one-third of the cost thereof, and that in the mean time they would work the mine together, which they did for about six months.

On March 1, 1878, Bybee bought out Smith for $500, and gave him his note for the amount, payable in two years.

On July 26, 1878, Neely, by order of the proper court and in pursuance of the sale aforesaid, conveyed the premises to Bybee, who on the same day sold and conveyed an undivided two-thirds thereof to the defendants A. W. Hawkett and E. C. Robinson; and on the same day, and as a part of the transaction, said Bybee entered into a written agreement with said Hawkett and Robinson in the words and to the effect following:

" That whereas, the party of the first part [Bybee] has sold to the parties of the second part [Hawkett and Robinson] the undivided two-thirds of certain mining property in Josephine county, Oregon, known as the Taylor claims, and said parties agree to mine and operate said mining property as a company, and as a consideration for said two-thirds interest the said parties of the second part are to pay certain debts; it is therefore agreed as follows: That said parties of the second part agree to pay and assume $6,098.24 in the following debts, to-wit: To James Neely, administrator of Evan Taylor's estate, $2,784.56; Kaspar Kubli, $882.68; Daniel Green, $500; William Smith, $500; and agree to pay to William Bybee, $1,432. The said amounts to be paid down, or arranged upon such time as may be agreed on between the parties of the second part and the persons to whom said debts are due."

The agreement then further provided:

(1) That the " parties of the second part agree to put on said claims, at their own expense, such improvements and additional machinery as may be necessary;" (2) that all the " amounts above mentioned, and also the cost of any additional improvements which may be put onto said claims, are to be repaid to said parties of the second part out of the profits taken out of said mines when the same shall be taken out, and before any dividends shall be made to the members of said company;" (3) that the profits of said mines, after repaying the amount of said debts and the cost of said improvements, " shall be equally divided between the then members of said company, aforesaid;" and (4) that said property and " the improvements which shall be hereafter put on said claims are to be held as a lien and security for the payment of the debts above specified."

This agreement was executed at Jacksonville, Oregon, by Hawkett, for himself and E. C. Robinson, who was then at Oakland, California, living with his father, the defendant Jesse Robinson. The defendant C. Magruder was also present, and paid out for E. C. Robinson, upon the purchase of the property, to Neely, $2,784.56, the balance due from Bybee to the administrator on the sale of the property to him in October, 1877; to Bybee, $432; to Kasper Kubli a check upon E. C. Robinson for $500, which was duly paid. At the same time that Hawkett and Robinson purchased from Bybee, it was arranged

to buy out Irwin's equity for $2,500, which was paid as follows: $500 by Hawkett in cash, furnished by E. C. Robinson; by receipt for $500 due Magruder from Irwin on account; and by the undertaking of Hawkett and Bybee to pay $85.43 due said Kubli from Irwin, and of Hawkett to pay $86.24 due from Irwin to Bybee. For the balance of the sum due Bybee, Hawkett, for himself and Robinson, gave a promissory note for $1,000, payable to the order of Bybee one day after date, with interest at 1 per centum per month, and for the balance due Kubli they gave a similar note for $382.68, with Bybee as surety. Nothing has been paid on these notes by Hawkett or Robinson, nor upon the sums due Green and Smith; as aforesaid. The sums due Green and Smith have since been paid by Bybee, and on December 2, 1879, Kubli obtained a judgment for $489.15 on the note given him for $382.68, which Bybee satisfied on July 6, 1881.

Hawkett and E. C. Robinson commenced operations on the mine in September, 1878, digging a ditch of some length, and putting up a giant and pipe furnished by Jesse Robinson, from California. About the first of January they commenced to work the mine, and in that month Jesse Robinson visited the mine and remained there until the following spring, giving more or less direction to its management. The mine did not prove remunerative, and Hawkett, who had put his skill and services as a miner into the venture against Robinson's money, on March 17, 1879, withdrew from the company and conveyed his third of the property to E. C. Robinson for the nominal consideration of $5,000.

On May 13, 1879, E. C. Robinson mortgaged the undivided two-thirds of the premises to the defendants Magruder and Haymond, to secure the payment of his note of the same date, made payable to said defendants 30 days after date, for the sum of $2,295, with interest at the rate of 1 per centum per month; which mortgage was duly recorded on May 15, 1879. On May 14, 1879, E. C. Robinson again mortgaged the same interest in the premises to the defendant Jesse Robinson, to secure the payment of his note of the same date, made payable to said defendants 30 days after date, for the sum of $4,975, with interest at the rate of 1 per centum per month; which mortgage was duly recorded on the same day; and on July 16, 1879, said Jesse Robinson assigned said last-mentioned note and mortgage to his brother, the defendant John L. Robinson, of Tioga county, Pennsylvania, for the sum of $4,300.

This suit has now diminished to a proceeding to enforce the agreement of July 26, 1878, including the lien provided therein as a se-

curity for the payment of the debts therein specified. There is also an allegation left in the bill that the Robinsons did not truly account for the gold dust taken out of the mine, and a prayer for an account. The answers of the defendants E. C. and Jesse Robinson state that only $2,800 was taken out up to the commencement of this suit, when the mine passed into the hands of a receiver, where it has since remained, all of which and much more was expended in improving and working the mine; and whatever the fact may be, the evidence to the contrary is vague, trifling, and scarcely worthy of consideration.

The agreement of July 26, 1878, is practically a personal obligation of Hawkett and E. C. Robinson, and also Jesse Robinson, if he was a partner with them in the purchase of the mine, as the plaintiff alleges, to pay the debts therein specified, and also a mortgage of the property to secure such payment. The personal liability of E. C. Robinson and Hawkett, in case the property is not sufficient to pay the debts, is admitted; but that of Jesse Robinson depends upon the fact whether or not he was a partner with Hawkett and E. C. Robinson in the purchase on July 26, 1878. He was not known in the transaction as such. Bybee did not give him credit or part with anything upon the faith of his being responsible for it as a partner or otherwise. But he now alleges that Jesse Robinson was a secret partner in the purchase, and the burden of proof is upon him to establish the fact, before he can hold him responsible as such.

The evidence upon this point is conflicting, and largely made up of admissions by members of the company to the effect that J. Robinson was a partner, which are clearly inadmissible for that purpose, (1 Greenl. Ev. § 177,) and the casual and indefinite conversations and remarks of J. Robinson concerning the management and prospect of the business while he was at the mine, which might have proceeded from the fact that he was interested as a partner, or as the father of E. C. Robinson, and the principal creditor of the company. Hawkett is the only witness that testifies that J. Robinson ever said he was a partner in the purchase of the mine, and his statement is to the effect that J. Robinson was the real party in interest, but that he did not want to be known in the matter. But his credibility is affected somewhat by the fact that he may be now trying to shift the responsibility of a losing adventure undertaken upon his judgment and recommendation, and is very much affected by the further fact that on May 11, 1879, he deliberately wrote to a person seeking to collect one of the debts specified in the agreement of July 26,

1878, that J. Robinson had no interest in the matter, except that he had loaned him and E. C. Robinson money to open the mine with.

Both E. C. Robinson and J. Robinson deny in their answers that the latter was a partner in the purchase or working of the mine, and the evidence of the plaintiff is not sufficient to establish the partnership against these denials, if at all. It may be and probably is true that there was some private agreement or understanding between the father and the son by which the former was interested with the latter in this adventure, and that so far they sustained to one another the relation of partners instead of that of debtor and creditor, but that would not make J. Robinson a partner of the firm of Hawkett and E. C. Robinson, or Hawkett, Robinson, and Bybee. No one can become a member of firm without the knowledge and consent of all the partners. Collyer, Part. 5.

The agreement of July 26, 1878, was not recorded until May 30, 1879, and subsequent to the execution and record of the mortgages to Magruder and Haymond and Jesse Robinson, but before the assignment of the latter to John L. Robinson. But both these mortgages and this assignment were made in consideration of previous indebtedness, and therefore the mortgagees and assignees are not entitled to be regarded as purchasers. Besides, such mortgagees must be held upon the proof to have had actual knowledge of the lien provided for in the agreement of July 26th, and therefore took their mortgages in subordination thereto, irrespective of the question of priority of record. The assignee had constructive notice of this lien also when he took his assignment, as the agreement had then been admitted to record. Jones, Mortg. § 458 and note.

These conclusions are admitted by counsel for the defendants E. C. Robinson and J. Robinson, but he also claims that Bybee was a partner in the working of this mine from the date and by virtue of the agreement of July 26th, and that so much of the debt due Magruder and Hawkett as arose from the furnishing of supplies to the company, Bybee, as a member thereof, is personally liable for, and therefore his lien upon this property or the proceeds of it ought to be subject in this suit to the satisfaction of this claim. It is admitted that the debt for which the mortgage was given to J. Robinson is not a demand against the company, it being wholly for money and material furnished Hawkett and E. C. Robinson to enable them to open and improve the mine as per their agreement with Bybee. It is also admitted that $500 of the debt for which the mortgage was given to

Magruder and Hawkett is not a demand against the company, it being the sum advanced by Magruder to Irwin for E. C. Robinson on the purchase of his interest in the mine, the advance being made by the settlement of an account of that amount which Irwin owed Magruder. The remaining $1,795 of this debt, it is claimed by Magruder in his answer, was due from "Hawkett and E. C. Robinson," *or* "the company mentioned in said agreement of July 26th," "for goods, provisions, etc., furnished to said company, and for freighting done by said firm of Magruder & Hawkett for said firm or company of the Josephine mine" prior to May 13, 1879.

This is indefinite as to whether the goods and freighting were furnished to Hawkett and Robinson while opening the mine, or to Bybee, Hawkett, and Robinson while operating it. In the first case Bybee would not be liable under any circumstances. No testimony has been offered on the subject except the answer of Magruder, and that is not satisfactory. In the nature of things these supplies and this freighting would be furnished to improve the mine as well as to operate it. The burden of proof is, I think, upon Magruder and Hawkett to show that these things were furnished to a company of which Bybee was a member. Besides, the fact that he settled with E. C. Robinson, who then represented Hawkett as well as himself, and took his individual note for the amount, and a mortgage upon his individual interest in the mine as security, without paying any attention to Bybee, or his interest, is a circumstance tending to show that Magruder did not then regard the debt as due from Bybee.

On the other hand, counsel for the plaintiff insist that Bybee was not, by the terms of the agreement of July 26th, to become a partner with Hawkett and Robinson until the proceeds of the mine had reimbursed them for the money expended in its purchase and improvement, which, it is admitted, it never did.

In my judgment the agreement created a partnership from its date, consisting of Hawkett, Robinson, and Bybee, for the purpose of operating the mine, and that, whenever it was operated by any or either of them, they all became liable for the debts thereby incurred; and the fact that a division of profits between the partners was postponed until the money advanced by Hawkett and Robinson for the purchase of a two-thirds interest, and the improvement of the whole of it, does not affect the unqualified agreement of the parties in words of the present tense,—"to mine and operate said mining property as a company."

In *Beauregard* v. *Case*, 91 U. S. 134, a question of partnership arose under very similar circumstances. In the course of the opinion of the court delivered by Mr. Justice Field it is said:

"There was in this agreement all the essential conditions for the creation of a partnership—provision for a union of services and money, and a division of profits and losses. The postponement of a division of profits between the three partners until the capital advanced by two of them should be refunded, with interest, did not alter the character of the agreement as one of partnership, nor the liability of all the partners to third persons for debts contracted in the prosecution of its business."

But admitting the partnership, and assuming that this debt is a valid demand against the firm, and that therefore Bybee is liable therefor, I do not see how Magruder and Hawkett can set up their claim in this suit.

So far as Bybee is concerned this is a suit to enforce the agreement of July 26th as a personal contract against Hawkett and E. C. Robinson, and as a mortgage against the property. Magruder and Hawkett are not parties to it, nor have they any rights in it except by reason of the lien of their mortgage, and that to have their mortgage adjudged valid and assigned its proper place in the order of time and payment. But it is admitted that it is subsequent in point of time to that of the plaintiff's, and that its payment out of the proceeds of this property as a debt secured by a lien thereon must be deferred until that is satisfied. But the defendants have no standing in this suit or right in this property except as mortgagees, and that is subordinate to the plaintiff's. This is not a suit to recover anything from the defendants Magruder and Hawkett, and in which they can therefore plead a counter-claim or set-off. Neither can they, if they would, convert their answer into a species of cross-bill and subject the sum which the plaintiff may obtain in this suit to enforce his mortgage against the property in question to the satisfaction of an independent personal claim which they may have against him. If they wish to enforce such a claim against him as a member of the partnership created by the agreement of July 26th, the courts are open to them to bring their action against him for that purpose.

The plaintiff paid the balance of the debt to Kubli of $382.68 as follows: He signed the note of Hawkett and Robinson, therefore, as surety, drawing interest at 1 per centum per month, upon which Kubli obtained judgment, which the plaintiff paid; and he now seeks to recover what he paid on that judgment, including the inter-

est, costs, and attorney fee, rather than the original amount, with legal interest.

But the liability of Hawkett and E. C. Robinson arises upon the agreement of July 26th, which is to pay the debt specified therein, with such interest as the law will allow thereon, none being agreed upon, and the costs properly chargeable against them in this suit for its collection. Whether the plaintiff has gained or lost in his contract as surety, or in the acquisition of these claims, is nothing to the defendants. As has been said, their liability in this suit is measured by the agreement of July 26th.

The plaintiff, on his own account and as the representative of the other creditors mentioned in said agreement, has the first lien upon this property for the sum of $2,382.68, the aggregate sum of said claims, with interest thereon at the legal rate, to-wit, 10 per centum per annum, from July 26, 1878, to January 25, 1880, a period of one year and six months, and at 8 per centum from then to July 1, 1882, making in all the sum of $3,113.36, together with the costs and expenses of this suit, except as to the defendants against whom the bill is dismissed.

The defendants Magruder and Hawkett have the second lien upon the undivided two-thirds of the property for the full amount of their note and mortgage, with interest as therein provided, and the costs of their defence.

The defendant John L. Robinson, as the assignee of Jesse Robinson, has the third lien upon said undivided two-thirds of said property for the full amount of his note and mortgage, with interest as therein provided, and the costs of his defence.

The decree of the court will be that the bill be dismissed as to the defendants who are not liable to the plaintiff in this suit, and have no interest in the subject of it, namely, Jesse Robinson, Thomas Robinson, William W. Irwin, William Smith, Kasper Kubli, John Bolt, James F. Gazley, and A. A. Fink, and that they, and each of them, recover costs from the plaintiff; that the master of this court sell this property as upon an execution at law, and apply the proceeds, after paying the costs and expenses of the sale, upon the claims aforesaid in the order specified.