(Court of Appeal, Parish of Orleans.)

## A BALDWIN vs. L. A. WACHSTETTER ET AL.

I. G. Kittredge for plaintiff and appellee.

L. R. Hoover for defendant and appellant.

GODCHAUX, J.—This suit is on a promissory note of thirty-day maturity for the sum of four hundred ($400) dollars, dated March 14, 1908, bearing eight (8) per cent. interest from maturity, made by the defendant Wachstetter to the order of the New Orleans National Bank, and bearing the indorsement of James J. O'Rourke and the New Orleans Engineering Company, a partnership composed of the said Jas. J. O'Rourke and James O'Rourke, his father, the said partnership, as well as its individual members and the maker, being made parties defendant and a judgment **in solido** being sought against them all for the face of the note with interest from maturity and the further sum of $3.30 expended in protest fees.

The defense (except as to the defendant Wachstetter, who confessed judgment) is that Jas. J. O'Rourke had no authority or power, on behalf of the firm, which derived no use nor benefit from the proceeds realized upon

the note, to make the firm indorsement, the same having been made solely for the accommodation of the defendant Wachstetter and not in the course of usual and customary business of the firm.

Plaintiff acquired the note by indorsement over from the payee the New Orleans National Bank, of which he is president.

There was judgment as prayed for against all defendants in solido, but this appeal is prosecuted solely by the partnership and only one of its members—namely, Jas. O'Rourke, the father.

The first question presented is whether the partnership is a commercial one, and the liability of its members solidary, or an ordinary one and the liability of its members simply joint.

The business of the partnership being that of engineers and contractors and consisting of advising with reference to and of undertaking contracts for the erection of electric light, power and waterworks plants; for the laying of water, gas and sewer mains, and for works of like character, it is well settled that the partnership with reference to such business, constitutes an ordinary partnership.

> Beauregard vs. Case, 91 U. S. 141; Moores &
> Co. vs. Bates, Benson & Co., 13 An. 40; Harde-
> man vs. Tabler, Crudup & Co., 36 An. 555;
> McGehee vs. McCord, 14 La. 362; Pugh vs.
> Priestley, 15 La. 152; Jamisin vs. Cullom &
> Co., 110 La. 781.

The fact proved in the record that the firm advertised itself and acted as the local selling agent of certain foreign machinery manufacturers, is insufficient, in the absence of evidence showing whether this agency was conducted as broker, factor or commission merchant, or

in the firm name or that of its principal, to stamp the partnership a commercial one.

**Ward vs. Brandt et al, Syndics, 11 Martin, 331, 422.**

So also the proof that the firm sold, in one instance, some machinery to another concern engaged in similar business, and in two other instances, an "indicator" and two boilers, respectively, all of which sales might have been made by the firm, for aught the record discloses, in the name and for account of these foreign manufacturers, is equally inadequate to discharge the burden which rested on plaintiff of fixing the firm's commercial character, and the solidary liability of its members, which is never presumed.

**Bank of Commerce vs. Mayer, 42 An. 1031; Turnage vs. Wells, 19 An. 135.**

The utmost effect that could be given those isolated sales would be to hold that the parties, to whom the property was sold, might, with respect to those sales alone, hold the firm's liability to be that of a commercial partnership.

**Robertson vs. D. E. Lizardi, 4 Rob. 300.**

Outside of these transactions there is no proof that the firm ever engaged in the purchase or sale of personal property, except such as was required and actually employed by it in the execution of its construction contracts, and, upon the evidence before us, the firm must be held, if at all, as a particular partnership.

As to the liability of the firm upon the indorsement, the facts are as follows:

J. J. O'Rourke, the son, was the sole manager of the business and finances of the firm and had, and frequently exercised authority to execute the firm's name and indorsement in matters related to its business and finances —the other partner, his father, never questioning the

exercise of such authority, and appearing to possess scant knowledge of, and to exhibit little interest in, the firm's affairs, except on occasion when the firm's credit having been apparently exhausted, he was called upon by his son to lend his personal indorsement for the purpose of securing funds for the firm.

In January, 1907, the defendant Wachstetter loaned the defendant firm, through J. J. O'Rourke, the son, the sum of $500.00, the transaction being entered as such in Wachstetter's name upon the partnership books. Subsequently Wachstetter and the said J. J. O'Rourke agreed to go into the automobile business on their personal account, and to that end it became necessary for them to purchase an automobile. The negotiations of this purchase were conducted in Wachstetter's name, and it was agreed between him and J. J. O'Rourke, on behalf of the firm, that the draft upon Wachstetter that would accompany the bill-of-lading covering the automobile, should, when presented, be paid by the firm, the latter being still indebted to Wachstetter on account of the loan in an amount exceeding that of the draft. Upon presentation of the draft, Wachstetter promptly turned it over to the firm for payment, and the latter informed the bank through which it had been presented, that the firm would meet it on the Thursday following. This it did not do, and Wachstetter, having complained to J. J. O'Rourke of the firm's failure to comply with its agreement with him to meet the draft, and O'Rourke having pleaded that the firm presently had no funds and would have none for thirty days to come, the thirty-day note in question was executed at J. J. O'Rourke's suggestion and was indorsed by him in the firm's name and individually, it being agreed that it would constitute a liability of the firm alone and would be paid by the latter at its maturity—at which time, according to J. J. O'Rourke's representation the concern would have ample

funds to do so. The draft was paid by the proceeds arising from the negotiation of the note with the payee, the New Orleans National Bank, the latter, however, having no knowledge of the circumstances surrounding the transaction of the purpose of the loan. Jas. O'Rourke, the father, knew nothing of the existence of the note until a day or so before its maturity, and he seems to have at no time until the present suit was filed, committed himself to a denial or an affirmance of his son's authority to indorse the note for the firm or of the firm's liability thereon.

The authority of the son to make the firm's indorsement in matters pertaining to its business and finances being established, and it thus appearing that the indorsement was made in the ordinary course of the firm's business, in order to raise funds to pay the draft, as it had agreed to do, thereby discharging or, at least, postponing the payment of the loan which it secured from Wachstetter, the various special defenses, attacking the authority of the son and charging that the indorsement was one for Wachstetter's accommodation, from which the firm derived no use or benefit, fall to the ground, and the Court has no difficulty in concluding that the note constitutes a liability of the partnership.

**R. C. C., Art. 2874; Petrovic vs. Hyde, 16 La. 231.**

The judgment of the lower Court requires amendment, however, in so far as it charges the defendant, James O'Rourke with liability for the entire sum allowed. His liability arises through his being a member of an ordinary partnership, and, as such, is joint and should be restricted to one-half of the judgment.

It is, therefore, ordered and decreed that the judgment appealed from be so amended as to make the liability of the defendant, James O'Rourke thereunder and to re-

strict same to one-half of the amount of said judgment, and, as thus amended, the said judgment is affirmed, the cost of appeal to be borne by the appellee.

January 10, 1910.