Eox, D. J.
Dexter Jordan, one of the firm of Jordan & Blake, was administrator on the estate of Robert M. York, and having collected considerable sums of money as administrator used them for firm purposes — an account being opened on the firm books of Jordan & Blake by which the “Estate of R. M. York” was, from time to time, credited with all sums thus received by Jordan, and charged with all disbursements made by him for the estate. The firm having been adjudged bankrupt, and Jordan having since died, Mrs. York, as administratrix de bonis non, claims to prove against the firm estate and also the individual estate of Jordan this balance due from Jordan, there being assets of both of said estates. The register allowed the proof against Jordan’s estate, and disallowed the proof against the firm estate, and from this an appeal is taken.
The construction given by Judge Lowell in In re Blandin, 5 B. R. 41, to the provisions of the bankrupt act respecting *320 proofs of debts relieves these matters of some objections of a technical nature which otherwise might perhaps occasion doubt. In that case the wife of a bankrupt had loaned her husband money, and claimed to prove for the same against his estate, although by the laws of Massachusetts she could not sustain an action at law for its recovery. Judge Lowell there held that equitable claims were within the scope of the bankrupt act, and that it was the intent of the act to give all creditors an equal share of the assets without regard to the mode in which their rights might have been enforced if there had been no bankruptcy; that as to both debtors and creditors the act is highly remedial, and the district court is vested with most ample equitable powers to enable it to work out full remedies to all persons; that, although the twenty-fourth section provided, on appeal, the ordinary remedy by a suit at law, the circuit court might take such order in relation to appeals not fully provided for by section 24 as may be necessary to conform the proceedings to the nature of the case. James, L. J., in Ex parte Adamson, L. R. 8 Ch. Div. 820, states the-law as follows: “It being the established rule in bankruptcy that every debt which a person could, either in his own name or in the name of any other person, recover at law or in equity was a provable debt in bankruptcy.”
Jordan, as the administrator of York’s estate, was not authorized to appropriate to the use of Jordan & Blake the funds held by him in that capacity. It was in law a breach of his trust as administrator, and, although no fraud was intended by him, his act was in violation of law. By the entries upon the firm books of the various sums thus paid to the firm his copartner, Blake, became cognizant of the transaction, and the firm thereby became chargeable as trustees for the amount thus loaned to the firm by Jordan as administrator. In England there is a uniform current of authorities that when trust funds are thus misappropriated and loaned by an executor or trustee, under a will, to a firm, with the sanction of its members, this amount constitutes a joint and several claim, provable against the firm and the individual members of the firm who have knowledge of the transac *321 tion. Under the law, as it was formerly declared in England, and so long as double proof was not permitted, it might be that the creditor was put to his election whether to proceed eventually against the firm estate or that of its members, though at the present day, since the act of 1869, it may be that double proof might now be permitted. No such question of election can here arise, as our bankrupt act and the decisions of the courts here allow of double proof in cases where a joint and several liability exists.
The following are some of the English cases which permit proof of debt to be made when the executor or trustee has committed a breach of trust by improperly loaning the funds in his hands: Ex parte Watson, 2 V. & B. 414; Ex parte Heaton, Buck’s Bankruptcy Cases, 35, in which the vice chancellor says: “Those who receive trust property from a trustee, in breach of his trust, become themselves trustees, if they have notice of the trust;” Ex parte Poulson, De Gex, 79; Ex parte Woodin, 3 Mont. Dea. & De Gex, 399; 6 De Gex, M. & G. 795, 801; Ex parte Carne, L. R. 3 Ch. 463; Ex parte Norres, L. R. 4 Ch. 280; Ex parte Adamson, L. R. 8 Ch. Div. 807.
In Adair v. Shaw, 1 Sch. & Le Froy, 262, Lord Bedesdale says: “Trusts are enforced, not only against those persons who rightfully are possessed of the trust property as trustees, but also against all persons who come into possession of the property bound by the trust, with notice of the trust, and whoever so comes into possession is considered as bound, with respect to that special property, to the execution of the trust.” Many of the authorities will be found in 2 Lindley on Part. 1247.
Judge Treat, in In re Tesson, 9 B. R. 379, held that where an executor had invested funds of the estate in his partnership business, with the knowledge and assent of his copartners, the parties entitled to the fund may prove their debts against the partnership, although they have proved against the estate of the executor. The only point upon which the learned judge appears to have entertained any doubt was whether they could pursue both the firm and individual *322 estates. By later decisions this point is clearly established. It is clear, therefore, from these authorities, that for this wrongful use of these trust funds by the partnership the partnership and its members have become chargeable, and that a joint and several claim was thereby created against the joint and several estates.
Can an administratrix de bonis non sustain such proofs ? It is certainly for the interest of all concerned in the York estate, whether as creditors, legatees, heirs, or sureties on his administrator’s bond given by Jordan to the judge of probate, that these proofs should be sustained, if possible, in behalf of the administratrix de bonis, so that the fund may pass under her control and be administered according to law as part of the assets of the estate; and, after some deliberation, I am satisfied that it may be so done.
By the law of this state, (Rev. St. c. 72, § 15,) the judge of probate may expressly authorize any party interested to commence a suit on a probate bond for the benefit of the estate, and the judgment and execution, by section 17, are recovered by the judge of probate in trust for all parties interested in the penalty of the bond, and he shall require the delinquent administrator to account for the amount of the same, if still in office; but if not, he shall assign it to the rightful administrator, to be collected and the avails thereof accounted for and distributed, or otherwise disposed of, as assets. This statute has so far changed the common law, as declared by the supreme court of the United States in 16 Wallace, (Bull v. New Mexico,) that that decision is no longer applicable in this state. As the law now is, not only the funds belonging to the estate in the hands of the administrator at his death or removal are assets which go to the new administrator, hut all gums recovered from him and his bondsmen for breach of his duty as administrator are to be received by the new administrator and treated as assets.
Any difficulty which might otherwise arise from a want of privity between the old administrator and the new is thus obviated, and by a reasonable construction of this statute it follows that in a proceeding of this nature the new adminis *323 trator should be at liberty to reach the assets, whether in the hands of the former administrator or of other parties who are chargeable with holding them in violation of law.
Under the law as it now stands in this state, (it being the duty of the administrator de bonis to administer upon the whole estate, to collect and apply to the common benefit all that has not been so done,) the bankrupt court, acting as a court of equity, will aid him to reach whatever property has been wrongfully misapplied by his predecessor, and which is chargeable as assets of the estate. It is indisputable that Jordan & Blake were accountable to some one for this amount. From some quarter a claim should be made therefor. There is no way in which it can be so directly applied where it belongs as by allowing the administrator de bonis to receive it. It is needed to meet the various claims still remaining unadjusted against the York estate; and I think that, upon the ground of trust, aided by the statute above referred to, the proof may well be sustained against the firm estate, and also against the individual estate of Dexter Jordan. I hold als© that under the statute proof might be supported against Jordan’s estate upon the bonds given by him as administrator.
In Massachusetts there is a statute quite similar to the one in this state; and in Wiggin, Adm’r de bonis, v. Sweet, 6 Met. 198, Shaw, C. J., says, “that by virtue of this statute such administrator de bonis becomes the sole representative of the estate — the trustee for all persons having an interest in it; that he is personally interested in the estate, and is aggrieved in his property if there be a failure to account for all that is due to the estate, and therefore may appeal.” And this view is sustained by the opinion of the court in Newcomb v. Williams et al. 9 Met. 538.
The proof, I hold, may be sustained upon another ground. Jordan, as administrator, loaned the money of the estate t© the firm. It became a debt due to him in that capacity, which, if he had not been one of the firm, he could have enforced against the firm as administrator, and when collected the avails would have been assets. There was an implied promise to pay to the estate of York these funds belonging to York’s *324 estate, and this implied promise, I hold, would be the foundation of an action at law in behalf of the administrator de bonis non against the firm.
In Catherwood, Adm'r de bonis, v. Chaband, in 1 B. & C. 155, the plaintiff sustained an action on a bill of exchange indorsed to the former administrator, in payment of a debt due the estate. Holroyd, J., in his opinion, says: “The decisions in the old cases proceeded upon the principle that contracts made with an administrator were personal to him, and that he must sue upon them in his own right and not in his representative capacity. That principle has since been •altered, and it has been ruled in several modern cases that upon such contracts an administrator may sue in his representative capacity.” In the same case Bailey, J., says: “An administrator may sue in his representative character upon promises made to himself, when the money will be assets when received. Now, if the administrator dies intestate, without having sued upon such a promise, the administrator de bonis non may sustain an action upon it, for he succeeds to all the legal rights which belonged to the administrator in his representative capacity. By this mode of proceeding the money received is immediately applicable to the right fund, as assets of the first intestate, whereas, if the action had been brought by the personal representative of the first administratrix, it would in the first instance have become a part of his estate, and must afterwards have been transferred from that to the estate of the first intestate.”
In Moseley v. Randall, 6 L. R. 2 B. 342, Cockburn, C. J., says: “If the promise was made to the original administratrix, as administratrix, the proceeds of the action would be assets, and the administrator de bonis non is the proper person to sue.” Sullivan, Adm'r de bonis, v. Holker, 15 Mass. 374, is to same effect. The entry on the books of Jordan & Blake of the credit to estate of R. M. York, of these sums, conclusively shows that the promise was to that estate, the loan was made by the estate, the firm thereby became the debtor of the estate, and the debt still remains due from the *325 firm to the estate, and should be paid to or collected by the representative of the estate.
The decision of the register is overruled, and the proof allowed against the joint estate.