## In re SHULTS et al.

### (District Court, W. D. New York. September 12, 1904.)

### No. 1,513.

1. BANKRUPTCY—BANKING PARTNERSHIP—RIGHT OF DEPOSITOR TO SET OFF.

On the bankruptcy of a banking partnership, a depositor having a credit balance in his account is entitled to set off the same against a note on which he is indebted to the bank.

2. SAME—TRANSFER OF CLAIMS AFTER INSOLVENCY OF BANKRUPT.

After a banking partnership, subsequently adjudged a bankrupt, had suspended payment and closed the bank, certain depositors, with full knowledge of the facts, assigned their claims against the bank to a firm of which one of the depositors was a member, and which was a debtor of the bank, for the purpose of enabling such claims to be set up as a setoff or counterclaim against the indebtedness. *Held*, that such transfers were an attempt to obtain an unlawful preference, and, having been made within four months prior to the bankruptcy, they were ineffectual to give any right of set-off to the assignee.

3. SAME—SET-OFF OF INDIVIDUAL AND PARTNERSHIP CLAIMS.

A solvent partnership which is indebted to a bankrupt cannot set off against such indebtedness a claim due from the bankrupt estate to one of the partners.

In Bankruptcy. On questions certified from referee.

E. S. Brown, for claimants.

H. V. Pratt, for trustee.

HAZEL, District Judge. This is a review of the decision of Darrin, referee, refusing to allow the claimants to set off certain claims transferred to them against their liability to the bankrupts. Prior to June 23, 1903, Catherine Shults and Rose Mark, as copart-

ners, carried on the business of private bankers in Cohocton, N. Y., under the firm name of W. J. Shults & Co. On the above date the bank closed, and suspended payment, and notice of such suspension was posted upon the outer door of the bank. On July 27, 1903, the said bankers, upon their voluntary petition, were adjudged bankrupts, individually and as copartners. Thereupon a trustee was appointed. While the bankrupts conducted the business of banking, Henry P. Wilcox and Jennie A. Wilcox, his wife, had each opened an account in their separate names, subject to withdrawal by individual check or draft. The firm of Wilcox & Son, of which the depositor Henry P. Wilcox, was a member, were also customers of the bankrupts; but on the day the bank suspended payment, their account was overdrawn to the amount of $6.57. The individual deposits of Jennie A. Wilcox, amounting to $165.66, and of Henry P. Wilcox, of $255.05, were on July 1, 1903, transferred by them in writing to Wilcox & Son, who were then indebted to the bank in the small overdraft above stated, and were also liable to the bank as makers and indorsers of promissory notes in the amount of $455. Wilcox & Son now seek to offset against their liability to the bankrupts the sum of $420.70, the amount of the claims assigned to them. It is conceded that the accounts of the depositors above mentioned were assigned and transferred in the manner stated for the express purpose of enabling Wilcox & Son, as such assignees, to offset the same against their liability to the bank. It is also admitted by the claimants that the parties knew that the bank had suspended payment and closed its doors when the claims were transferred. The record also shows that Henry P. Wilcox was liable to the bank as indorser upon a promissory note made by one Finch, amounting to $48, which became due on July 1, 1903. The referee held that the amount of the note could be set off against the deposit, thus diminishing the amount of the bankrupt's debt.

The principle underlying the case of mutual debts and credits ordinarily applies in the transactions of banking. In re Little (D. C.) 110 Fed. 621. And in the absence of fraud or collusion, the bank may set off the deposit against notes of the bankrupt held by it. New York County National Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380. The principle of the case just cited unquestionably applies to the case at bar. Hence the liability of Wilcox as indorser on the Finch note may in part be set off against the amount remaining on deposit. Although the suspension of payment by the bankers, and the posting of notice that they were unable to meet their obligations, is not strictly an act of bankruptcy, the referee correctly decided, on the evidence, that the claims of Jennie A. Wilcox and Henry P. Wilcox against the bankrupts were transferred to Wilcox & Son within four months before filing the petition in bankruptcy with a view of asserting a counterclaim or set-off, and that the assignee had knowledge of the bankrupt's insolvency. It has been held that by depositing money with a bank an ordinary debt is created, although the money is to be paid on de-

mand, or when a check or draft is drawn against it. No fiduciary relationship is established, and the claim of the creditor who deposits money in a bank is provable in bankruptcy. New York County National Bank v. Massey, supra. To permit a transfer of a claim which would give a debtor of the bank a set-off and counterclaim against his liability would undoubtedly be a preference, within the meaning of the bankrupt act. The proofs show that the assignment under consideration was made with such knowledge regarding the affairs of the bankrupt as enabled the claimants to secure, if possible, an unlawful preference.

The next point urged is that, irrespective of the assignment by Henry P. Wilcox to the partnership of which he is a member, he may nevertheless legally set off and counterclaim the balance of the deposit after the payment of the Finch note against the liability of his firm to the bankrupts. The rule announced in Tucker v. Oxley, 5 Cranch, 34, 3 L. Ed. 29, upon which claimants place reliance, has no application to the facts of this case. The right to set off is invoked on account of the partnership liability in solido, and therefore it is contended the individual debt of Henry P. Wilcox must be set off against the joint indebtedness of the partners to the bankrupts. In the Tucker Case the partners who were indebted to Tucker dissolved their relations, and Tucker in turn became indebted to the individual partner who continued the business and subsequently became bankrupt. His assignee brought an action against Tucker for this debt, and Tucker was allowed to set off his claim against the partners. The ground of the decision of the court, as stated in Gray v. Rollo, 18 Wall. 629, 21 L. Ed. 927, rested upon the fact that the debt due from the partners to Tucker was enforceable against the property of either of them, and, such debt being provable in bankruptcy against the partner who became bankrupt, the set-off against the bankrupt's claim was a correct application of the law. The rule in the state of New York seems to be that a joint debt cannot be set off or operate as a counterclaim against a separate debt, or, conversely, a separate debt against a joint debt. Spofford v. Rowan, 124 N. Y. 108, 26 N. E. 350; Hunter v. Booth, 84 App. Div. 585, 82 N. Y. Supp. 1000. This sound rule is thought to be general in its application. Gray v. Rollo, supra; Scammon v. Kimball, 92 U. S. 367, 23 L. Ed. 483. The bankrupts were not indebted to the claimants. No indebtedness was created by the transfer of the debts against the bankrupts, and therefore there exist no mutual debts or mutual credits between the estate of the bankrupts and the claimants. A different question would be presented if, for example, the firm of Wilcox & Son were insolvent, and the trustee sought to enforce the firm liability by proceeding against the partner to whom the bankrupts were indebted, or where the joint liability to the bankrupts and the debt to one of the partners grew out of the same transaction. See In re Crystal Spring Bottling Co. (D. C.) 100 Fed. 265. In such cases there would be a mutuality between the parties, and equitable considerations would not allow the trustee to retain the deposit, and

also to collect the firm obligations from the separate estate of the partner to whom the bankrupts were indebted.

The first and fifth questions submitted by the certificate of review are answered in the negative; the others, in the affirmative. So ordered.