William J. **ROCHELLE, Jr., Trustee,** Plaintiff-Appellant,

v.

**UNITED STATES of America,** Defendant-Appellee.

No. 74–1639.

United States Court of Appeals, Fifth Circuit.

Oct. 24, 1975.

Rehearing Granted Jan. 26, 1976. See 526 F.2d 405.

Linda N. Coffee, Philip I. Palmer, Jr., Dallas, Tex., for plaintiff-appellant.

Frank D. McCown, U. S. Atty., Martha Joe Stroud, Asst. U. S. Atty., Ft. Worth,

Tex., Karl Schmeidler, Atty., Lawrence R. Jones, Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Chief, Appellate Sec., Tax Div., Dept. of Justice, Washington, D. C., Charles G. Barnett, Tax Div., Dept. of Justice, Michael D. Cropper, Dallas, Tex., Joseph M. McManus, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before RIVES, GODBOLD and GEE, Circuit Judges.

GODBOLD, Circuit Judge:

This case involves the interplay of two sections of the Bankruptcy Act. Section 5g, 11 U.S.C. § 23g,[1] gives priority in the allocation of the assets of a bankrupt partner to creditors of the partner over creditors of the partnership. Section 68a, 11 U.S.C. § 108a,[2] permits a creditor of a bankrupt who also is in debt to the bankrupt to set off the two debts against each other, claiming or paying only the balance.

In this case the United States is a creditor of a bankrupt partnership, Wynne-Compass Fair, Inc. The United States seeks to set off against the claim running to it as a partnership creditor a claim asserted on it by the bankruptcy estate of a partner of Wynne-Compass Fair, Inc.[3]

We hold that the claim of the United States against the estate of the partner, based upon the partnership obligation, is subordinated by § 5g to the claims of creditors of the partner in his individual capacity. But we further hold that this subordination of the United States' claim under § 5g does not bar the United States from utilizing the set-off provision of § 68a, which is available for provable claims even though they are not allowable.

An individual, Wynne, and a New York corporation, Compass Fair, Inc., formed a New York partnership, Wynne-Compass Fair, Inc., to operate the Texas pavilion at the 1964 New York World's Fair. The partnership proved unsuccessful. It filed for a Chapter XI arrangement in July 1964 and was adjudicated a bankrupt in August 1964. In September an involuntary petition in bankruptcy was filed against Wynne, and in November he was adjudicated a bankrupt. The United States filed against the estates of both the partnership and of Wynne, the general partner, proofs of claim for the partnership's unpaid federal employment (withholding, FUTA and FICA) and excise taxes.

In November 1967 Wynne and his wife, who had filed a joint federal in-

1. Section 5g provides:
"The net proceeds of the partnership property shall be appropriated to the payment of the partnership debts and the net proceeds of the individual estate of each general partner to the payment of his individual debts. Should any surplus remain of the property of any general partner after paying his individual debts, such surplus shall be added to the partnership assets and be applied to the payment of the partnership debts. Should any surplus of the partnership property remain after paying the partnership debts, such surplus shall be distributed among the individual partners, general or limited, or added to the estates of the general partners, as the case may be, in the proportion of their respective interests in the partnership and in the order of distribution provided by the laws of the State applicable thereto."

2. Section 68a provides:
"In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."
Section 68b, which modifies and limits § 68a, provides in pertinent part:
"A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate and allowable under subdivision g of section 93 of this title [§ 57g] . . . ."

3. We will follow the standard practice and describe the creditors by the estate against which they claim: an individual creditor is a creditor who claims against the estate of the individual partner and a partnership creditor is a creditor who claims against the estate of the partnership.

come tax return in 1962, claimed a refund of $326,947.92 of their 1962 income tax by a carryback of the 1964 partnership loss. The claim was allowed in full by IRS. Rochelle, the trustee of Wynne's bankruptcy estate, now claims the refund on behalf of Wynne's individual creditors. The United States resists, asserting under § 68a a right to set off the refund against the unpaid tax liability of the partnership. Put in practical terms, the trustee would have the United States pay the tax refund into Wynne's individual estate and wait in line with other creditors in either or both of the partner and partnership bankruptcy proceedings to collect the unpaid tax debts of the partnership. Presumably the United States would not be able to recoup even the amount of the tax refund paid in, let alone the total tax debt of the partnership. The District Court held that the government had the right to set off the two debts and trustee Rochelle has appealed.[4]

This appeal presents the following questions:

(I) What is the effect of § 5g on the United States' tax claim against the individual estate of the partner Wynne?

(II) Does § 68a authorize offset between the government's claim against the bankrupt—as affected by § 5g—and its liability for a tax refund?

(A) Are the claims "mutual"?

(B) Is the United States' claim "provable" and is it "allowable" under § 57g, 11 U.S.C. § 93g?

(C) Does § 68a allow offset of subordinated claims?

---

**4.** Prior to this proceeding Rochelle consented in writing to the setoff and now attempts to back out of his consent. In light of our disposition of the case we need not consider the effect of this consent.

**5.** New York courts have held specifically that the individual partners become severally liable for the debts of the partnership when the part-

## I. Section 5g

The United States argues that § 5g "relates to priorities of payment between classes of creditors, and provides a rule of distribution; it does not alter the status of one who is a creditor of both the partnership and the partner." And, the government says, since it enjoys the status of creditor of both partner and partnership, it may, under § 5g, share in the partner's estate as a creditor of that estate.

We agree with the government that its tax claim against the partnership is also a personal liability of the partner. But the claim did not begin that way. The partnership was formed in New York, and under New York partnership law, N.Y.P.L. § 26(1) (McKinney's, 1948), partners are jointly and severally liable only for partnership liabilities under N.Y.P.L. §§ 24 and 25. These include liability for wrongful acts in the course of business or with the partners' authority under § 24 and liability for breaches of trust by misapplication of funds under § 25. All other liabilities of the partnership—including tax debts— are only joint liabilities of the individual partners, N.Y.P.L. § 26(2) (McKinney's, 1948). The partners' individual or several liability arises when "the property held jointly is insufficient to pay the firm debts, or it appears that there can be no effective remedy without resort to individual property. . . . The theory of the law was that the joint liabilities should be paid from the joint property if possible, and not until that remedy was exhausted, or resort thereto shown to be useless, could payment from the individual property be exacted." *Seligman v. Friedlander*, 199 N.Y. 373, 376, 92 N.E. 1047, 1048 (1910) (citations omitted).[5] It is in this sense, then, that when

nership assets are exhausted. *Matter of Roberts*, 214 N.Y. 369, 108 N.E. 562 (1915); *see also Friedman v. Gettner*, 6 App.Div.2d 647, 180 N.Y.S.2d 446 (1958), aff'd, 7 N.Y.2d 764, 194 N.Y.S.2d 35, 163 N.E.2d 141 (1959); *Morrisey v. Berman*, 47 Misc. 586, 94 N.Y.S. 596 (1905). They have rarely had to decide what circumstances will give rise to the partners' several liability before final distribution of as-

a partnership is adjudicated a bankrupt or its assets are exhausted that all partnership creditors become creditors of the individual partners.

The United States cites cases to illustrate that tax liabilities of a partnership are also the individual liabilities of each partner. It further asserts that its tax claim against the partner is "not solely derivative upon its failure to obtain satisfaction of its claim against the partnership, instead, Wynne . . . is individually liable . . . whether there are sufficient assets available in the partnership estate." We take it that the government is suggesting that its tax claim, insofar as assertable against the partner's estate, enjoys a better status than the claims of other partnership creditors. But every case cited by the government for this argument relies on the syllogism that partners are liable for the debts of the partnership, tax liabilities are debts of the partnership, therefore the partners are liable for the tax debts.[6] Moreover, in every case the government's claim against the individual partner was pressed only after the bankruptcy of the partnership or its failure to pay the taxes due. In *Adams* the court refers to the partner's joint—not

joint and several—liability, 228 F.Supp. at 232, and in *Ross* the court noted the creditor's duty to pursue the partnership assets before turning to a retired partner, 176 F.Supp. at 935. Indeed, the government lost in *Ross* exactly because the partner, then retired but active when the tax debt was incurred, was only a surety, and the government failed to protect his interest by retaining a lien for his benefit on the principal debtor's assets. Thus these cases not only do not support the government's claim that Wynne was liable even if there were sufficient partnership assets, they actively refute it.[7] Whatever the status of the United States' claim against the bankrupt individual partner for the purposes of § 5g, it is no different than that of any other creditor of the bankrupt partnership.

Section 5g draws only one distinction, that between partnership creditors and individual creditors. It permits all individual creditors as a class to share on an equal basis in the individual estate while relegating all partnership creditors as a class to a subordinate position in claiming against the individual estate. We think the drafters would not have drawn this balanced, logical distinction if they

sets. The reason for this is that when an action on a partnership debt is brought against a partner, bankruptcy usually already has intervened and the rule of marshalling of assets, as embodied in the federal bankruptcy law, § 5g, then controls. *See Matter of Gray*, 111 N.Y. 404, 408, 18 N.E. 719 (1888). New York courts have held that mere default by the remaining active partner does not subject the retired partner to liability, *Morrisey v. Berman, supra*. Similarly, unsatisfied execution on a judgment against the partnership also does not give rise to the partners' several liability. *Everall v. Stevens*, 158 App.Div. 723, 143 N.Y.S. 874 (1913). The closest case is *Friedman v. Gettner, supra*, in which the court held that failure to allege "insolvency or inability to pay on the part of the surviving joint venturers" was a fatal pleading error. Joint ventures were considered identical to general partnerships. In light of the language in *Seligman* quoted above and the implication in *Friedman* that an allegation of insolvency would be adequate, we think it proper to hold that New York law would find the partners severally liable for the debts of the partnership once the

partnership is adjudicated bankrupt though prior to actual distribution of assets.

6. *Underwood v. U. S.*, 118 F.2d 760, 761 (CA5, 1941); *Young v. Riddell*, 283 F.2d 909, 910 (CA9, 1960), aff'g. 60–1 U.S.T.C. par. 9381, p. 76,054 (S.D.Cal., 1959); *Adams v. U. S.*, 328 F.Supp. 228 (D.Neb., 1971), relies on *Underwood v. U. S., supra*; *U. S. v. Ross*, 176 F.Supp. 932, 935 (D.Neb., 1959); *In re Crockett*, 150 F.Supp. 352 (N.D.Cal., 1957); *Baily v. U. S.*, 350 F.Supp. 1205 (E.D.Pa., 1972), relies on *Young v. Riddell, supra*; *American Surety Co. v. Sundberg*, 58 Wash.2d 337, 363 P.2d 99 (1961), relies on *Underwood v. U. S., supra*, without discussion. *Purvis v. U. S.*, 73–2 U.S. T.C. par. 9628 (CA9, 1973) is a summary affirmance with no discussion of facts or citations to any authority.

7. The United States does not rely on any theory that its tax claim has statutory priority over other creditors' claims, cf., *Lewis v. U. S.*, 92 U.S. 618, 620–621, 23 L.Ed. 513, 514 (1876); *In re Vetterlein & Co.*, 20 F. 109 (S.D.N.Y., 1884), in particular under § 64a(5) of the Bankruptcy Act, 11 U.S.C. § 104a(5).

meant one class—individual creditors—to include as well every member of the other class—partnership creditors.

This circuit has already ruled squarely on this proposition. In *In re Hurley Mercantile Co.*, 56 F.2d 1023 (CA5, 1932), we held that although "each partner is individually liable for every partnership debt," for bankruptcy act purposes

> the partnership with its property and debts is considered a separate entity from the partners with their several estates and creditors. The Bankruptcy Act requires them to be kept separate for administration, and that partnership assets be first applied to partnership debts, and individual assets to individual debts. Bankr.Act § 5 (11 U.S.C.A. § 23).

56 F.2d at 1025. See *Farmers' & Mechanics' Nat. Bank of Phila. v. Ridge Ave. Bank*, 240 U.S. 498, 36 S.Ct. 461, 60 L.Ed. 767 (1916). To the same effect, see, *e. g., In re Janes*, 133 F. 912 (CA2, 1904); *In re Knowlton & Co.*, 202 F. 480, 482 (CA3, 1913); *Bank of Reidsville v. Burton*, 259 F. 218, 219 (CA4, 1919); *Cutler Hardware Co. v. Hacker*, 238 F. 146, 147 (CA8, 1916). We know of no case to the contrary. See 1A Collier on Bankruptcy § 5.26 at 734.2–736. Even reducing a partnership claim to judgment against the partner does not alter the result, *id.* at 736 n. 6. Thus the government's tax claim on the partnership, like every other partnership debt, is subordinated to the claims of individual creditors by § 5g.

In support of its argument that partnership debts on which the individual partner's liability has matured are to be treated as individual debts under § 5g, the government says it should be permitted recovery against both estates, so-called double proof,[8] and cites in support thereof § 5h, 11 U.S.C. § 23h, and *Mitchell v. Hampel*, 276 U.S. 299, 48 S.Ct. 308, 72 L.Ed. 582 (1928). Under this argument if a partnership and a general partner both bankrupted and each estate paid 50 cents on the dollar, the partnership creditors would be paid in full, getting 50 percent from each estate, while individual creditors whose claims did not derive from partnership liabilities would receive but 50 percent.

Section 5h does not authorize allowance of such double claims but merely "remove[s] all arbitrary rules of practice and procedure which had interfered with the distribution of the estates of bankrupt partnerships and partners, in accordance with the settled rules of equity." 1A Collier on Bankruptcy § 5.22 at 730, n. 2, citing *Farmers' & Mechanics' Nat. Bank of Phila. v. Ridge Ave. Bank*, *supra*, and *In re Effinger*, 184 F. 728 (D.Md., 1911). Indeed, Collier specifically notes that

> [T]he rule of equitable distribution prescribed by § 5g is not to be varied by the proof of the claim of a partnership estate against an individual estate and *vice versa*, as set forth in § 5h.

1A Collier on Bankruptcy § 5.22 at 731.

The government's reliance on *Mitchell v. Hampel* is likewise misplaced. It is one of a series of cases in which partnership and partner have distinct but common liabilities. See the cases cited in 1A Collier on Bankruptcy § 5.35 at 751, n. 7. Collier broadly characterizes as joint and several certain situations where both partner and partnership are liable *in solido*, but in fact the cases represent only a few distinct types of common liability and not joint and several liability generally. In *Mitchell* the partners co-signed a bond of the partnership, rendering them liable jointly and severally as sureties individually, in addition to their liability as members of the partnership. The other cases involved liability of the partners not derived from the partnership liability,[9] liability of the partnership

---

8. Not to be confused with the problem of double proof under § 63, 11 U.S.C. § 103. *See* 3A Collier on Bankruptcy § 63.02[2] at 1779, distinguishing this from double proof against partners and partnerships.

9. *Robinson v. Seaboard National Bank of New York*, 247 F. 667 (CA3, 1918), aff'g, *In re W. S. Kuhn & Co.*, 241 F. 935 (W.D.Pa., 1917) (partners liable as endorsers of the partnership's note); *In re McCoy*, 150 F. 106 (CA7, 1906) (same).

as recipient of funds improperly taken by a partner,[10] or special priority of the creditor derived from statute.[11]

In light of these authorities we think it clear that the term "individual debts" in § 5g refers to debts of the individual partner not imposed upon him derivatively as a result of partnership debts. Section 5g thus subordinates a partnership creditor—even though it is also an individual creditor in that it owns a claim against general partners imposed on the partners because of a partnership liability—to other kinds of individual creditors in the allocation of the assets of the estates of the individual partners.[12] This result is not varied where the debt is a tax liability owed to the United States and no statute gives special priority.

## II. Section 68

■ Holding that the government's claim is subordinated to claims of individual creditors requires us to consider next the operation of Section 68. Section 68a broadly permits setoff of claims between the bankrupt and a third party. It applies both where the third party's claim is the larger and he seeks to be "allowed" a share of the estate, and where the bankrupt's claim is the larger and the bankrupt seeks to be paid on his claim against the third party. The precise language of the section is that after setoff "the balance only shall be allowed or paid," that is, allowed by the trustee or paid by the third party. See 4 Collier on Bankruptcy §§ 68.02[1] and 68.03.[13] It is available as a defense in a suit by the trustee against a third party on a debt owed to the bankrupt. 4 Collier on Bankruptcy § 68.02[1], at 848–854.

Section 68 itself contains three distinct tests: mutuality, provability, and allowability. This case requires us to consider whether there is also a fourth factor, that of subordination or non-subordination.

### A. Mutuality

The cases involving mutuality of debts between partnership, partner and third party can be divided into two basic factual situations. Both involve a third party who has a claim against one—partner or partnership—and who is in debt to the other—the partnership or the partner. In the first situation, the third party (C) has a claim against the partner (A) and is in debt to the partnership (AB), represented schematically as follows: AB → C → A. In the second situation, the third party has a claim against the partnership and is in debt to the partner, represented schematically as follows: A → C → AB.

■ Each of these two groups of relations can give rise to either of two situations, often termed by the cases as "reciprocal," corresponding to the different parties who can attempt to utilize setoff. In the first situation [AB → C → A], either the third party (C) or the partner (A) may seek to utilize a setoff. In case (a), the partner in debt to the third party may seek to offset against that claim the partnership's claim on the third party. In case (b), the third party in debt to the partnership may seek to offset against that claim his own claim on the partner. In neither case are the

---

10. *In re Coe*, 183 F. 745 (CA2, 1910) (partnership liable in tort for conversion); *In re Jordan*, 2 F. 319 (D.Maine, 1880) (trust *ex maleficio* from knowing use of assets subject to a trust).

11. *Lewis v. U. S.*, 92 U.S. 618, 23 L.Ed. 513 (1876) (priority of certain federal tax claims); *In re Vetterlein & Co., supra* (same).

12. There may be situations in which there is doubt whether a debt is a partnership or individual debt. *See* 1A Collier § 5.30. Whatever ambiguity may be inherent in these terms they pose no problem in the instant case. The tax liabilities resulted from the activities of the partnership and were incurred by the partnership in the first instance. The partner may be liable, but his liability is only that of any partner for the debts of his firm, and so for the purposes of this distinction this tax liability is a partnership debt. *Cf., In re Green*, 116 F. 118, 122 (N.D.Iowa, 1902).

13. The statute is misquoted in § 68.02[1] of Collier, text at n. 2 where it reads "allowed and paid" instead of "allowed or paid."

debts mutual, however, and in neither should the setoff be permitted. The reason is that in both cases B's share of the partnership claim against the third party is being taken away without B's consent and without any benefit to B since it is being set off against the third party's claim against A. A is relieved of his liability to C at the expense of the partnership, that is, both A and B. *Gray v. Rollo*, 85 U.S. (18 Wall.) 629, 21 L.Ed. 927 (1874) is an example of case (a); *In re T. M. Lesher & Son*, 176 F. 650 (E.D. Pa., 1910) and *In re Crystal Spring Bottling Co.*, 100 F. 265 (D.Vt., 1900) are examples of case (b).

█ In the second situation [A →C →AB] either the third party (C) or the partnership (AB) may seek to utilize a setoff. In case (c), one sued on the partnership debt to third party may attempt to set off against that claim the partner's claim against the third party. In case (d), the third party in debt to the partner may attempt to set off against that claim his own claim against the partnership. In both cases the liability of both A and B is being exchanged for the claim of A. B gains and gives up nothing. A loses his sole claim against C, but he gains his release from the partnership debt for which he was severally liable in any event.[14] C loses his claim against B on the partnership debt, but he gains his release from the liability to the partner A. Examples of case (c) include *Beauregard v. Case*, 91 U.S. 134, 23 L.Ed. 263 (1875), *In re Shults*, 132 F. 573 (W.D.N.Y., 1904), and *In re Sherman Plastering Co.*, 346 F.2d 492 (CA2, 1965).[15] Examples of case (d) include *Tucker v. Oxley*, 9 U.S. (5 Cranch.) 34, 3 L.Ed. 29 (1809), *In re Neaderthal*, 225 F. 38 (CA2, 1915),[16] and the instant case.

All of the cases in this second situation may satisfy the requirement of mutuality where the partnership debt is joint and several, depending on exactly who seeks to exercise the right to set off. Thus no one has a claim extinguished without a corresponding gain. But the claim of the partner against the third party that is extinguished by being set off against the liability of the partnership may be more valuable to the partner than his freedom from liability for the partnership debt. Conversely, the third party loses a claim against B, the other partner, which may be more valuable to him than being freed from liability to A. Thus, in each case it must be clear that the party who is foregoing a potentially more valuable claim or who is avoiding a potentially less onerous liability has either consented to the exchange or has no right to protest.

In the class (d) situations the third party elects to assert the claim he has on the partnership against one of the partners, an option he has where the debt is joint and several, where that partner has brought his action against the third party. It is the third party (C) who is losing his potential claim against the other partner (B), but he does so only at his own choice. A has no right to complain, since C could have held him individually liable on the joint and several partnership debt in any event. In *Tucker v. Oxley, supra*, the third party, Tucker, attempted to set off his claim against the partnership against a claim being made on him by the remaining partner. He voluntarily chose to forego his claim on the departed partner and assert the partnership claim against the remaining partner. Setoff was properly allowed.[17]

14. What A may lose is his indemnification action against B on the partnership debt. This issue has never been raised in any of the cases cited to or by this court in this case.

15. *Sherman Plastering* is not a partnership case but is analogous in terms of joint and several liabilities of companies as if they were partners. *See* footnotes 19 and 20, *infra*.

16. The court wrongly characterized the case as being of the first type, either class (a) or (b). The case is discussed in some detail, *infra*, footnote 18.

17. Note however that whether Tucker still had an action against the other partner is problematical. The partnership had dissolved and had not gone bankrupt, the remaining partner had assumed the rights and liabilities of the partnership, and Tucker, by continuing to deal with the remaining partner, may have consented to that arrangement and thus waived his

Similarly, in *In re Neaderthal*[18] *supra,* it was the third party who wanted to forego part of his claim against the partnership on the note and to avoid liability to the partner on the legacy. As a matter of mutuality this setoff should have been permitted, as a later decision in the same circuit noted in disavowing *Neaderthal's* analysis, *Sherman Plastering, supra.*

Another problem concerns whether the third party, as defendant, could set off against a partner's claim his own claim against the partnership for which the partner was only jointly liable. The third party would be giving up his claim against the partnership and the other partner, at his option. But the partner A would be subjected to a liability which the third party was obligated to assert first against the partnership. We have seen no case dealing with this exact point.

The class (c) situations are less simple. The third party may elect to assert his claim against one of three entities: the partner to whom he is indebted, the partnership, or the other partner. It is only in the former case that setoff is properly allowed.

In *Beauregard v. Case, supra,* the third party brought an action on the partnership liability against the "other partner" (B). The other partner attempted to utilize as setoff the claim against the third party owned by partner (A). The Court properly did not permit that setoff. The third party had elected, as it properly could, to lay the burden of the partnership debt on whichever of the partners it chose, and that partner had no cause to complain. Partner (A), who had a claim against the third party, could not be divested of that claim without either consent or being properly brought into the suit. In a sense this is not really a setoff problem at all. The claim put forward for setoff by the defendant simply was not his claim to assert in any event in any court, offensively or defensively.

The third party brought an action on the partnership liability against the partnership in *In re Shults, supra.* Again, the partnership did not own the partner's claim, and so, as in *Beauregard,* setoff was not allowed.

*Sherman Plastering, supra,* though not a partnership case, illustrates the situation where the action on the partnership debt[19] is brought by the third party

---

right to proceed against the other partner. *See Sherman Plastering, supra,* 346 F.2d at 495, n.2.

18. The difficulty in deciphering the obscure opinion in *Neaderthal* may be explained in part by the unusual factual situation. Samuel Neaderthal was a partner with two others. His mother loaned the firm $12,000 prior to her death in 1912. Firm and partners subsequently went bankrupt. Apparently the estates of all bankrupts were being handled by the same trustee. Samuel and another man were the executors of his mother's estate. The estate of the partnership owed the mother $12,000. The mother's estate owed the bankrupt son Samuel $2,400 from a residuary legacy in the mother's will. The executors filed a claim in bankruptcy for the $12,000 less the legacy of $2,400 owed to one of the partners. It was disallowed by the District Court on the protest of the trustees because it was too *small.* As trustees of the son's individual estate, the trustees in bankruptcy wanted to be able to collect the full $2,400, even though as trustees of the partnership estate they would have to pay a claim based on the $12,000 debt

rather than the resulting set-off debt of only $9,600 (approximately). The latter, of course, would be paid at the rate owed to general creditors. As executor, Samuel wanted to be discharged of the liability for the legacy at the same rate that he would recoup the loan paid to the partnership, that is, the rate paid to all creditors of the estate of the partnership.

In essence the parties were litigating a claim against the bankrupt estate that was more logically litigated in an action by the trustee in bankruptcy against the third party debtors of the individual estate. It was only the circumstance of all estates being handled by one trustee that made it sensible for the partnership trustee to oppose a claim against the estate for being too small, knowing that he would be able to collect in his other capacity as individual trustee, and also avoid any possible res judicata effects of allowing the reduced partnership claim.

19. The debt was actually the joint and several debt of cosureties on a bond. Despite the factual difference, it is identical in terms of legal rights and liabilities to a partnership debt that

against the partner[20] to whom the third party is indebted. The creditor elected to lay the debt at the door of one to whom he was in turn indebted, and there was no reason why he should be able to avoid setoff, having made that election.[21]

The instant case is analogous to *Neaderthal* and *Tucker v. Oxley.* It is the United States as the third party which has foregone its claim against the partnership and the corporate partner and seeks to impose it all on the individual partner Wynne. Since the United States is the party urging setoff, its consent is implicit. The defendant partner here is not disadvantaged since the partnership is bankrupt and the partners are liable.

### B. Provability and allowability under § 57g

The trustee does not challenge that this claim is provable or that it is allowable under § 57g, so we treat these two matters only briefly.

 1. *Provability*: Section 63, 11 U.S.C. § 103, generally defines claims provable in bankruptcy. Although taxes are not specifically listed, there is little question that they are generally provable. *Cf.*, § 64a(5), and see 3A Collier on Bankruptcy § 63.02 at 1761–1762. Nor is provability affected by the debtor's liability in common with the partnership and other partners. The test is whether the claimant could have maintained an action against the bankrupt. Partnership claims are provable against the es-

tates of the partners. *Robinson v. Hamilton Wholesale Liquor Co.*, 132 F.2d 285 (CA6, 1942); *Matter of Kardos*, 17 F.2d 706 (CA2, 1927).

2. *Allowability*: Section 57g, 11 U.S.C. § 93g, requires creditors who have received "preferences, liens, conveyances, transfers, assignments, or encumbrances" to surrender the same as a precondition to allowance of their claims against the bankrupt estate. The government clearly did not receive a lien, conveyance, transfer, assignment or encumbrance. The only arguable point is whether it has received a preference.

 The meaning of the term preference in § 57g is the same as that term is used in § 60a(1), 11 U.S.C. § 96a(1), see 3 Collier on Bankruptcy § 57.19[3.1] at 311–312. No property has been transferred from the debtor to the creditor, as defined in § 60a(1). Thus, there has been no preference. *Cf., New York County National Bank v. Massey*, 192 U.S. 138, 24 S.Ct. 199, 48 L.Ed. 380 (1904).

### C. Setoff of subordinated claims

The question remains whether setoff is available when the claim of the creditor is subordinated to other claims against the estate by § 5g. Rochelle argues that the distribution provisions of § 5g somehow "override" the set-off provisions of § 68a. No court has ruled on this precise point,[22] and so we must look to the structure of the statute and cases in

---

is joint and several. That situation does not, however, come within the purview of § 5g, which the court specifically noted.

20. Actually a debtor jointly and severally liable. See the previous footnote.

21. This case is unusual in its factual background, since the third party (the trustee in bankruptcy) had attempted to collect from the other joint obligers on the surety bond but was prevented from doing so by the District Court. That does not affect our analysis of mutuality, however. A single partner was still forced to bear the burden of the partnership debt. It does not matter that the election to sue that partner was forced on the third party by a bankruptcy court. It is all the same to that partner. As a question of mutuality between

these two parties the practical realities, the analysis and the results are the same.

22. The court in *Sherman Plastering*, in attempting to explain away the erroneous mutuality of debts analysis in *Neaderthal*, suggested that the result might be interpreted as promoting the policies of § 5g, present in the Bankruptcy Act when *Neaderthal* was decided but not relied on or cited by that court, 346 F.2d at 495. The court's statement that § 5g would prohibit setoff of a partnership creditor's claim on the individual estate against the individual estate's claim against the creditor—exactly this case—is dictum. The case before the court did not involve a partnership and did not involve any question under § 5g.

analogous areas. We think the § 68 set-off provision contemplates the kind of problems posed by claims of varying vitality and has dealt with them as much as the drafters thought appropriate.

Our analysis of the relationship between § 68a and § 5g rests on the notion of *expressio unius est exclusio alterius.* Section 68a broadly permits setoff of all mutual claims. Section 68b "makes certain specific exceptions to this allowance of set-off," *New York County National Bank v. Massey, supra,* 192 U.S. at 145, 24 S.Ct. at 200, 48 L.Ed. at 383. It requires claims to be provable and then further limits that with a single precise exception of lack of allowability, though not lack of allowability generally but lack of allowability only under § 57g. A provable claim may not be allowable for any of a wide range of reasons. "Allowability implies, not only provability, but also validity. If for any reason the claim is improper, or if there be a good defense to it, it is not allowable, although it may be provable as a debt." *Williams & Co. v. U. S. Fidelity & Guaranty Co.,* 11 Ga.App. 635, 75 S.E. 1067, 1070, *rev'd on other grounds,* 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915); *Lesser v. Gray,* 236 U.S. 70, 74–75, 35 S.Ct. 227, 59 L.Ed. 471, 475 (1915). A court may disallow a claim for reasons specifically related to bankruptcy, for example, that it was not proven on time under § 57n, 11 U.S.C. § 93n, or was fraudulently obtained within the meaning of §§ 67d(1)–(4) and (6), 11 U.S.C. §§ 107d(1)–(4) and (6), or because of the close relation between the debtor and the claimant, such as close relatives, §§ 44a and 59e, 11 U.S.C. §§ 72a and 95e, or stockholders or officers of a corporate bankrupt, *Richardson's Executor v. Green,* 133 U.S. 30, 10 S.Ct. 280, 33 L.Ed. 516 (1890), or because it was held by a creditor who would not surrender a preference under § 57g. The trustee's defenses to claims include all the defenses of the original debtor, and these also go to allowability, *e.g.,* compromise, duress, fraud, limitations, statute of frauds, and the like. Subordination of provable claims may also be ordered in other situations as a species of disallowance, 3A Collier on Bankruptcy § 63.08.

Provable but disallowable claims utilized for setoff have usually involved claims not actually proven on time.[23] Viewing the matter somewhat more precisely in terms of subordinated rather than disallowed debts, the stronger arguments lie with the third party holding the subordinated debt. The holder of a disallowed claim is given more than priority over other creditors; he is given a benefit he would not have received even if the bankrupt estate were adequate to pay all creditors in full. Where the debt is subordinated, by contrast, the lawful preference worked by § 68 setoff goes to one within the "hierarchy of claims" against the estate, one who would have shared in the estate if there were sufficient assets.

We have been able to locate only two cases involving setoff of subordinated claims. *In re Phoenix Hotel Co. of Lexington, Ky.,* 20 F.Supp. 240 (E.D.Ky., 1937), held that setoff was not available to subordinated claimants but its reasons are unpersuasive, and we decline to follow it.[24]

The Ninth Circuit held that a subordinated claimant could invoke setoff under § 68a. *Hayden v. Standard Accident Insurance Co.,* 316 F.2d 598 (CA9, 1963).

---

23. *Willcox v. Goess,* 92 F.2d 8, 16 (CA2, 1937), *cert. denied* 303 U.S. 647, 58 S.Ct. 646, 82 L.Ed. 1108 (1938); *Norfolk v. W. Ry. Co. v. Graham,* 145 F. 809 (CA4, 1906). *See* 4 Collier on Bankruptcy § 68.08 at 890.

24. The court considered the subordination issue on the erroneous basis that state law relating to setoffs controlled rather than federal law. It held that permitting setoff would give a preference to the creditor. But it had permitted setoff of nonsubordinated claims the holders of which were thereby given a like "preference." It held the debts were not mutual but relied on cases concerning unpaid stock subscriptions, a species of trust in bankruptcy law wholly unlike the status of the bondholder-creditor whose subordinated claim was in issue.

Claimant was a surety of the bankrupt and had paid off part of a third party's claim against the bankrupt. Both the third party and the surety sought to recover from the bankrupt, the former for the remainder of the debt, the latter for that share of the debt already paid by it as surety. The court considered that the surety was subordinated by § 57i, 11 U.S.C. § 93i,[25] but that nonetheless its claim for indemnification could be set off against its own debt. 316 F.2d at 601. After noting that setoff is available for all provable claims with the limited exception of claims disallowed under § 57g, the court reasoned that if denying setoff and requiring the surety to pay his debt into the estate were desired § 68 or § 57i could have been amended to provide that a surety's claim for indemnification was not provable for purposes of setoff. In the absence of such legislation the court held the claim for indemnification was provable within the meaning of § 68. *Id.* at 602.

Finally, although setoff is no longer to be considered generally available in reorganizations under § 77, 11 U.S.C. § 205,[26] earlier courts applying § 68 to setoffs in the reorganization context were expected to consider, inter alia, "the superior liens, if any, to that of the creditor seeking set-off . . . ," *Susquehanna Chemical Corp. v. Producers Bank & Trust Co.*, 174 F.2d 783, 787 (CA3, 1949). Consideration of superior creditors could only be necessary if the holders of subordinated claims might have setoff available in the first place.

◼ We think a subordinated claim can be used to set off a claim by the bankrupt estate against the creditor even though the subordinated claim could not itself share in the dividends. And we think this rule is applicable where the claim is subordinated by operation of § 5g. If Congress intended a different result it would have drawn § 68 more narrowly than to permit setoff of all provable claims generally with but a single narrow exception, or § 5g more broadly than merely to provide priority for distribution of assets.

Rochelle's other arguments are irrelevant or without merit. The United States concedes that penalty tax claims are not allowable and says it so conceded to the trial court. Since a debtor in possession is liable for new debts it incurs, there is no plausible reason why others jointly or jointly and severally liable for the debts of the debtor in possession should not also be liable for such debts. The argument that the partner should be held liable only for his aliquot share of the debts of the partnership is frivolous. Whether the United States must exhaust its claim on the partnership assets before attempting to utilize the setoff is resolved by the main part of this opinion. The estoppel questions are moot in light of our determination on the main setoff question.

◼ We thus hold that a tax claim of the government, like the claims of any creditor of a partnership, is a joint and several liability of the partners on the insolvency of the partnership. It is a provable debt of the partner not disallowed by § 57g. It and the tax refund claim of the partner against the government are mutual debts under the facts of this case. Finally, § 68 setoff is available between such claims notwithstanding the subordination of the partnership claims by § 5g.

The District Court did not err in permitting the setoff sought by the United States.

Affirmed.

---

25. A construction now made specific by a congressional amendment.

26. *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 474, 94 S.Ct. 2504, 41 L.Ed.2d 243, 250 (1974).